**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
Proposed Attorneys for Zayat Stables, LLC,
Debtor-in-Possession

|  |  |
|---|---|
| In re:<br><br>ZAYAT STABLES, LLC,<br><br>              Debtor-in-Possession. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE DONALD H. STECKROTH<br>CASE NO. 10-13130 (DHS)<br><br>Chapter 11<br><br>**VERIFIED APPLICATION IN SUPPORT OF DEBTOR'S MOTION FOR A FINAL ORDER: (1) APPROVING POST-PETITION FINANCING, (2) PROVIDING UNSECURED ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 364(b), 503(b)(1) AND 507(a)(2), AND (3) GRANTING OTHER RELATED RELIEF**<br><br>**HEARING DATE AND TIME:**<br>March 2, 2010, at 10:00 a.m.<br><br>**ORAL ARGUMENT REQUESTED** |

TO:   Honorable Donald H. Steckroth
        United States Bankruptcy Court

    The Verified Application of Zayat Stables, LLC, the within debtor and debtor-in-possession (the "Debtor"), by and through its counsel, Cole, Schotz, Meisel, Forman & Leonard, P.A., respectfully represent:

48051/0001-6247578v4

### I. INTRODUCTION AND JURISDICTION

1. This Verified Application is submitted in support of the Debtor's motion for a final Order: (1) approving post-petition financing with Sherif El Zayat, (2) providing unsecured administrative expense status pursuant to 11 U.S.C. §§ 364(b), 503(b)(1) and 507(a)(2), and (3) granting other related relief (the "Motion").

2. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. BACKGROUND

3. On February 3, 2010 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, the United States Code (the "Bankruptcy Code"). Since the Filing Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. A detailed description of the Debtor's business and facts precipitating the filing of the Debtor's Chapter 11 proceeding is set forth in the Affidavit of Ahmed Zayat (the "Zayat Affidavit") submitted in support of the Debtor's various "First Day Motions." Those facts are incorporated herein by reference.

5. As set forth in the Zayat Affidavit, the Debtor is a leading thoroughbred racehorse owner with approximately 203 horses. The initial focus of the Debtor's operation since its inception in 2005 has been developing racing and breeding prospects, with long-range plans to acquire companies involved in equine health research and product development as well as the possibility of racetrack ownership.

48051/0001-6247578v4

A. **The Debtor's Pre-Petition Indebtedness**

    1. **Fifth Third Bank**

6.    The Debtor is a party to a pre-Filing Date senior secured credit facility (the "Prepetition Credit Facility") with Fifth Third Bank ("Fifth Third") dated as of August 1, 2007, as amended from time to time, consisting of seven notes (the "Notes") evidencing seven separate loans as follows:

    (a)    August 1, 2007 Revolving Note – Zayat Stables executed and delivered to Fifth Third a revolving note, effective date August 1, 2007, in the face amount of $10,000,000, with a maturity date of July 31, 2009 (the "August 1, 2007 Note"). The August 1, 2007 Note required Zayat Stables to make quarterly interest payments at prime minus 1.00%.

    (b)    February 25, 2008 Revolving Note – Zayat Stables executed and delivered to Fifth Third a revolving note, effective date February 25, 2008, in the face amount of $2,700,000, with a maturity date of March 1, 2010 (the "February 25, 2008 Note"). The February 25, 2008 Note required Zayat Stables to make quarterly interest payments at Prime minus 1.00%.

    (c)    April 1, 2008 Term Note – Zayat Stables executed and delivered to Fifth Third a term note, effective date April 1, 2008, in the original principal amount of $6,000,000, with a maturity date of March 1, 2012 (the "First April 1, 2008 Note"). The First April 1, 2008 Note required Zayat Stables to make quarterly interest payments at Prime minus 1.00%, plus annual principal payments in the amount of $2,000,000 on the first day of March each year, beginning on March 1, 2010.

    (d)    April 1, 2008 Term Note – Zayat Stables executed and delivered to Fifth Third a term note, effective date April 1, 2008, in the original principal amount of $10,000,000, with a maturity date of December 20, 2011 (the "Second April 1, 2008 Note"). The Second April 1, 2008 Note required Zayat Stables to make quarterly interest payments at Prime minus 1.00%, plus a principal payment in the amount of $1,500,000 on December 20, 2009, and a principal payment in the amount of $2,000,000 on December 20, 2010.

3

 (e) April 1, 2008 Term Note – Zayat Stables executed and delivered to Fifth Third a term note, effective date April 1, 2008, in the original principal amount of $3,945,970, with a maturity date of December 15, 2011 (the "Third April 1, 2008 Note"). The Third April 1, 2008 Note required Zayat Stables to make quarterly interest payments at Prime minus 1.00%, plus a principal payment in the amount of $1,000,000 on December 20, 2009, and a principal payment in the amount of $1,500,000 on March 1, 2010.

 (f) September 23, 2008 Term Note – Zayat Stables executed and delivered to Fifth Third a term note, effective date September 23, 2008, in the original principal amount of $3,000,000, and with a maturity date of March 1, 2009 (the "September 23, 2008 Note"). The September 23, 2008 Note required Zayat Stables to make quarterly interest payments at Prime.

 (g) January 14, 2009 Draw Note – Zayat Stables executed and delivered to Fifth Third a draw note, effective date January 14, 2009, in the maximum principal amount of $3,000,000, and with a maturity date of January 1, 2010 (the "January 14, 2009 Note"). The January 14, 2009 Note required Zayat Stables to make quarterly interest payments at the Libor Rate plus 2.75%.

7. The Prepetition Credit Facility is governed by that certain credit and security agreement dated as of August 1, 2007, as amended on January 14, 2009 (collectively, the "Prepetition Security Agreement"), and made as collateral security for: (a) the Notes; and (b) all other obligations, which include all loans, advances, indebtedness and each and every other obligation or liability of the Debtor and Pioneer of the Nile, Ltd.[1] owed to Fifth Third (as further defined in the Prepetition Security Agreement).

8. In accordance with the Prepetition Security Agreement, the Prepetition Credit Facility is secured by:

---

[1] Pioneer of the Nile, Ltd. ("Pioneer") is an affiliate of the Debtor that has no assets. Pioneer is a co-guarantor (see below) of the Prepetition Credit Facility.

4

48051/0001-6247578v4

(a) all thoroughbred bloodstock and/or stallion shares and/or fractional interest(s) therein, their offspring and young, both born and unborn, and/or fractional interest(s) therein, stallion seasons and shares, and any other interest(s) in any of the above owned by the Debtor and/or Pioneer, however classified, whether now owned or after-acquired, including all substitutions thereof (the "Equine Collateral");

(b) all policies of insurance maintained on the Equine Collateral and all rights to proceeds thereof and refunds thereunder, whether now owned or after-acquired;

(c) all accounts, deposit accounts, accounts receivable, notes receivable, chattel paper, general intangibles and rights to payment arising out of or in any way relating to the sale, transfer, or other conveyance of all or any interest in any of the Equine Collateral, whether now owned or after-acquired;

(d) all racing income, breeder's awards income from sales of stallion seasons and shares and any other income derived from or in any way related to the Equine Collateral, whether now owned or after-acquired;

(e) all certificates of title, certificates of registration and other evidences of ownership, relating to, or in any way connected with, the Equine Collateral, including without limitation, all Jockey Club Certificates of Registration and all stallion share certificates and stallion syndication agreements, whether now owned or after-acquired;

(f) the savings account, having the account number 7380700760, held by the Debtor with Fifth Third (the "Fifth Third Control Account") (the Equine Collateral and the Fifth Third Control Account is hereinafter referred to as the "Collateral"); and

(g) all proceeds and products of the Equine Collateral and the Fifth Third Control Account (the "Proceeds," and together with the Equine Collateral and the Fifth Third Control Account, hereinafter referred to as the "Collateral").

9. In addition, on or about January 14, 2009, Ahmed Zayat, the Debtor's sole member and officer, and Pioneer, an affiliate of the Debtor, each executed a guaranty (the "Zayat Guaranty" and the "Pioneer Guaranty"), whereby they each unconditionally agreed to guarantee

5

the payment of all monies due, or which may thereafter become due, to Fifth Third under the Prepetition Credit Facility. Both of the Zayat Guaranty and Pioneer Guaranty have a liability limit of $38,700,000.00.

10. Additionally, the Debtor is a party to that certain Deposit Account Control Agreement (the "Control Account Agreement") with Fifth Third, as depository bank. Pursuant to the Control Account Agreement, the Debtor maintains a balance of approximately $600,000.00 in the Fifth Third Control Account to secure the Notes.

### 2. Keeneland Association, Inc.

11. As of the Filing Date, the Debtor also was indebted to Keeneland Association, Inc. ("Keeneland"), a combination thoroughbred race horse and bloodstock sales company (the "Keeneland Loan"). The Keeneland Loan was in the aggregate amount of $3,131,500.00 and relates to the Debtor's purchase of twenty-four (24) horses (the "Keeneland Horses," a schedule of which is attached as **Exhibit A**) in September 2009.

12. The Keeneland Loan was reduced to $2,381,500.00 by virtue of a February 2, 2010 payment to Keeneland in the amount of $750,000.00 from Sherif El Zayat, the brother of the Debtor's principal. The Debtor executed a note in favor of Sherif El Zayat memorializing its obligation created by that payment to Keeneland on its behalf. As consideration for that payment, Keeneland has agreed to the Debtor's use of its cash collateral and to provide other cooperation to the Debtor relating to the Keeneland Horses pursuant to that certain agreement dated February 2, 2010 between the Debtor, Ahmed Zayat and Keeneland.

13. The Keeneland Loan is memorialized by that certain note (the "Keeneland Note") and security agreement (the "Keeneland Security Agreement") dated as of October 12, 2009. In accordance with the Keeneland Security Agreement, the Keeneland Note is secured by the Keeneland Horses as well as the "proceeds" and "products" from same, as such term is defined

6

in the Uniform Commercial Code of the State of Kentucky, and as further defined in the Keeneland Security Agreement.

### 3. Other Debt

14. As of the Filing Date, the Debtor has approximately $1,200,000.00 of other debt, which consists primarily of amounts due and owing to trainers, boarders and veterinarians. Some of these parties may assert statutory and/or common-law lien rights for the amounts due and owing, and the Debtor reserves all its rights with regard to any such claims.

### B. The Debtor's Proposed DIP Financing From Sherif El Zayat

15. Prior to the Filing Date, the Debtor devoted substantial time critically examining its business operations and funding requirements to identify the most efficient and comprehensive options for emerging from Chapter 11 and maximizing value for all creditors. The Debtor has continued to explore all strategic alternatives, including evaluating a possible sale of horses or other restructuring or recapitalization, or combinations thereof.

16. The Debtor's business is cyclical in nature and ordinarily runs at an operating shortfall leading up to the September and November 2010 horse auctions, where it recoups the expenses of training, maintaining and racing its horses.

17. The Debtor anticipates it will have the ability to operate its business through the use of cash presently on hand and anticipated cash collections through the end of March 2010. After that time, the Debtor requires a post-petition financing facility to ensure the seamless continuation of the Debtor's business pending the Court's consideration of the plan of reorganization, which the Debtor anticipates proposing shortly after the Filing Date.

18. As set forth in the budget attached as **Exhibit B** (the "Budget"), in addition to the use of Fifth Third's and Keeneland's cash collateral, the Debtor requires post-petition financing to operate its business in the ordinary course over the next 13 weeks. To that end, the Debtor has

7

negotiated an unsecured debtor-in-possession credit facility from Sherif El Zayat, Ahmed Zayat's brother, in the amount up to $2,450,000 that will be afforded administrative expense status (the "DIP Loan"). Sherif El Zayat will make up to $2,450,000 in funds available to the Debtor to enable the Debtor to pay the expenses reflected in the Budget.[2]

19.     After diligent consideration of all known circumstances, and through the assistance of J.H. Cohn, the Debtor, in its reasonable business judgment, believes that the Budget is achievable.

20.     The terms and conditions of the DIP Loan are set forth in that certain unsecured note dated February 3, 2010 (the "DIP Note") attached hereto as **Exhibit C**. The following is a summary of the significant terms of the DIP Loan:[3]

| | | |
|---|---|---|
| (a) | **Amount and Type of Facility and Availability:** | Loan in the amount of $2,450,000, the use of which is governed by the Budget. |
| (b) | **Maturity Date:** | Upon (1) the effective date of any plan of the Debtor confirmed pursuant to Section 1129 of the Bankruptcy Code in connection with the bankruptcy case of the Debtor in the United States Bankruptcy Court for the District of New Jersey; (2) dismissal of the Debtor's bankruptcy proceeding or conversion of same to Chapter 7, (3) the appointment of a trustee in the Debtor's bankruptcy proceeding; or (4) the grant of relief from the automatic stay in the Debtor's bankruptcy proceeding in favor of Fifth Third (the "Maturity |

---

[2] As set forth in the Budget, the Debtor anticipates it will draw approximately $1.5 million on the DIP Loan over the next 13 weeks. The DIP Loan is presently being maintained in an attorney escrow account for the purpose of funding draw downs by the Debtor as needed pursuant to the Budget.

[3] This section is intended to provide a summary of the DIP Loan only. The reader is directed to the DIP Note for a more complete recitation of the terms. Unless otherwise defined herein, capitalized terms shall have the same meanings ascribed to such terms in the DIP Note.

8

Date").

(c) **Use of Proceeds:**     Proceeds of the DIP Loan shall be used for working capital and general business purposes in accordance with the Budget.

(d) **Collateral Security and Priority:**     Unsecured. Sherif El Zayat will be afforded administrative expense status under Sections 364(b), 503(b)(1), and 507(a)(2).

(e) **Interest Rates:**     Prime, to accrue during the administration of the Debtor's case.

(f) **Fees**     None.

(g) **Remedies**     Failure to pay all amounts due on the Maturity Date shall constitute an event of default under the DIP Note (an "Event of Default"). Upon the occurrence of an Event of Default hereunder, Sherif El Zayat may (a) by written notice to the Debtor, declare the entire unpaid principal balance of the DIP Note, together with all accrued interest thereon, immediately due and payable, and (b) exercise any and all rights and remedies available to Sherif El Zayat under applicable law, including the right to collect from the Debtor all sums due under the DIP Note. The Debtor will pay all costs and expenses incurred by or on behalf of Sherif El Zayat in connection with Sherif El Zayat's exercise of any or all of its rights and remedies under the DIP Note, including attorneys' fees and costs.

21.   In accordance with the guidelines for financing requests in this Court, there are no "extraordinary provisions" with respect to the DIP Loan.

### III.   RELIEF REQUESTED AND BASIS THEREFOR

**A.   The DIP Loan Should Be Approved Under Sections 364(b), 503(b)(1) and 507(a)(2) of the Bankruptcy Code**

22.   Section 364 of the Bankruptcy Code governs a debtor's ability to obtain post-petition credit and provides, in pertinent part, as follows:

9

> (a)  If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.
>
> (b)  The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. §§ 364(a) and 364(b).

23. Section 503(b)(1) provides, "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including- (1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1). Section 507(a)(2) affords administrative expense claims allowed under Section 503(b)(1) priority over all administrative claims (except for allowed unsecured claims for domestic support obligations under Section 507(a)(1) of the Bankruptcy Code).

24. Section 364(b) requires notice, hearing and court approval before a debtor in possession may obtain unsecured credit outside the ordinary course of business that, in turn, will be given an administrative expense priority under Sections 503(b)(1) and 507 of the Bankruptcy Code. In re Bernheim, 62 B.R. 739 (Bankr. D.N.J. 1986); see also Jewell v. Beeler (In re Stanton), 248 B.R. 823 (9th Cir. BAP 2000); United States v. Tedlin (In re Mark Anthony Constr., Inc.), 78 B.R. 260 (9th Cir. BAP 1987); In re John Deskins Pic Pac, Inc., 59 B.R. 809 (Bankr.W.D.Va.1986). Thus, one who extends unsecured credit to a debtor, postpetition, may have a valid claim for recovery on a priority basis under Section 503(b)(1) of the Bankruptcy Code. See, e.g., In re Hartley, 39 B.R. 273 (Bankr. N.D. Ohio 1984).

25. The Debtor's management has concluded that Sherif El Zayat is the best and likely only alternative available at the present time for post-petition financing on the proposed

10

terms. In light of the current state of the credit markets and the Debtor's lack of material unencumbered assets to pledge to a lender given the preexisting liens of Fifth Third and Keeneland (and potentially service providers such as trainers and veterinarians), the Debtor could not reasonably obtain financing from another lender on the same or more favorable terms and conditions as the proposed DIP Loan. Based on collateral values relative to the amount of the secured debt, no conventional lender would agree to collateralize a debtor-in-possession loan by a junior lien to Fifth Third and Keeneland.

26. The Debtor's cash flow projections establish its ability to operate with current and anticipated cash on hand through the end of March 2010. The interests of all parties will be best served by a financing facility that provides additional liquidity and assures adequate capitalization pending the Court's consideration of the Debtor's plan of reorganization.

27. Sherif El Zayat has agreed to provide that financing facility. The DIP Loan will be provided on an unsecured, administrative priority basis under Section 364(b) of the Bankruptcy Code. 11 U.S.C. § 364(b). Consequently, the DIP Loan should be approved under Section 364(b) of the Bankruptcy Code and, Sherif El Zayat, should be afforded administrative expense priority under Sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

C. **The Terms of the DIP Loan are Fair, Reasonable and Appropriate**

28. The Debtor is unable to obtain unsecured credit in the ordinary course of business sufficient to satisfy its operating expenses. In the Debtor's business judgment, the DIP Loan was the best financing option available under the circumstances of these cases.

29. The proposed terms of the DIP Loan are fair, reasonable and appropriate under the circumstances of these cases and in light of the current economic climate. As contemplated by the policies underlying the Bankruptcy Code, the purpose of the DIP Loan is to enable the

Debtor to maintain the value of its estate while pursuing confirmation of a plan of reorganization. See generally, In re First South Sav. Ass'n, 820 F.2d 700, 710-15 (5th Cir. 1987).

30. Accordingly, the credit to be extended under the DIP Loan will be extended in good faith, and for valid business purposes and uses, the consequence of which is that Sherif El Zayat is entitled to the protections and benefits of Section 364(e) of the Bankruptcy Code.

**D.  The Debtor Has Exercised its Sound Business Judgment in Entering Into the DIP Loan**

31. After appropriate investigation and analysis, the Debtor's management has concluded that the DIP Loan provides the best alternative available. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. See In re Simasko Prods. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("Business judgments should be left to the board room and not this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985). In addition, it is not unusual for courts to approve insider loans because insiders are often the parties most committed to providing funds towards achieving a successful reorganization. See, e.g., In the Matter of Midwestern Companies, Inc., 47 B.R. 16 (Bankr. W.D. Mo. 1984) (approving insider loan on an administrative priority basis).

32. In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. In re Curlew Valley Assocs., 14 B.R. 506, 511-14 (Bankr. D. Utah 1981). Courts generally will not second guess a debtor-in-possession's business decisions when those

12

decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." Id. at 513-14.

33.  The Debtor exercised its sound business judgment in determining that a post-petition credit facility is appropriate and necessary, and have satisfied the legal prerequisites to borrowing under the DIP Loan. Accordingly, the Debtors should be granted authority to enter into the DIP Loan and borrow funds from Sherif El Zayat pursuant to Sections 364(b) of the Bankruptcy Code, and take all other actions contemplated by the DIP Loan and as requested herein.

## IV.  CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Final Order granting the Motion and such other relief as the Court deems just and appropriate under the circumstances.

> Respectfully submitted,
>
> COLE, SCHOTZ, MEISEL,
> FORMAN & LEONARD, P.A.
> Proposed Attorneys for Zayat Stables, LLC,
>
> By:  /s/ Michael D. Sirota
>      Michael D. Sirota
>      Warren A. Usatine

DATED: February 3, 2010

**VERIFICATION**

AHMED ZAYAT, of full age, certifies as follows:

1. I am the sole member and officer of Zayat Stables, LLC, the within debtor and debtor-in-possession (the "Debtor"). As such, I have full knowledge of the facts set forth herein, and am authorized to make this Application on the Debtor's behalf.

2. I have read the foregoing Verified Application and certify that the factual statements contained therein are true based upon my personal knowledge, information and belief.

3. I am aware that if any of the factual statements contained in the Verified Application are willfully false, I am subject to punishment.

    /s/   Ahmed Zayat
            AHMED ZAYAT

DATED: February 3, 2010

14

48051/0001-6247578v4