Jeffrey D. Prol, Esq. (JP 7454)
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Fax: (973) 597-2400

    -and-

Michael L. Scheier, Esq.
Robert G. Sanker, Esq.
James A. Burke, Esq.
KEATING MUETHING & KLEKAMP, PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Fax: (513) 579-6457

*Co-Counsel to Creditor Fifth Third Bank*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **ZAYAT STABLES, LLC** | Case No. 010-13130 (DHS) |
| Debtor. | |

**FIFTH THIRD BANK'S MEMORANDUM IN OPPOSITION TO
MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTOR'S
INTERIM AND FINAL USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND GRANTING
ADEQUATE PROTECTION, AND (B) SCHEDULING FINAL
<u>HEARING PURSUANT TO 11 U.S.C. § 363(c)(2) AND FED.R.BANKR.P. 4001</u>**

### I. <u>INTRODUCTION</u>

Fifth Third Bank ("Fifth Third") objects to the Debtor's use of Fifth Third's cash collateral. In its negotiations with the Debtor and its principal throughout 2009 regarding the restructuring of the Debtor's obligations to Fifth Third, Fifth Third uncovered substantial

evidence of a history by the Debtor and Ahmed Zayat, its sole member and officer, of fraud, dishonesty, incompetence, and gross mismanagement of the Debtor's affairs that justify the appointment of a trustee under Section 1104 of the Bankruptcy Code. Fifth Third is working on a motion for the appointment of a trustee and a more extensive objection to the Debtor's use of cash collateral, both of which will be filed early next week.

In this memorandum, Fifth Third sets forth its objection to the Debtor's use of cash collateral on an interim basis. In light of Keeneland's apparent consent to Debtor's use of its cash collateral and the proposed debtor-in-possession financing that is in the offing, there is no need for the Debtor to use Fifth Third's cash collateral at all prior to a final hearing. Alternatively, the Debtor should only be authorized to use of Firth Third's cash collateral to the extent that it is able to provide adequate protection of Fifth Third's interest in its cash collateral.

Attached to this brief as Exhibit A is the Affidavit of David Verville, as Exhibit B a document showing Debtor's undisclosed diversion of $2.75 million of insurance proceeds that he was required to remit to Fifth Third, but instead hid from Fifth Third despite repeated inquiries, as described more fully below, and as Exhibit C is an ECIS information sheet reflecting the bankruptcy filing of Ephraim David Zayat.

## II. BACKGROUND

### A. Fifth Third Loans To Zayat Stables

Over a period of several months, Zayat Stables executed and delivered to Fifth Third seven promissory notes evidencing seven different loans from Fifth Third to Zayat Stables (the "Notes"). The Notes had an original principal amount of $38,645,970.00. As of February 2, 2009, the balance owing under the Notes was $34,236,610.40.

Zayat Stables entered into an Amended and Restated Loan and Security Agreement (the "Security Agreement") with Fifth Third on January 14, 2009. The Security Agreement granted

Fifth Third a security interest in all "thoroughbred bloodstock and/or stallion shares and/or fractional interest(s) therein, their offspring and young, both born and unborn, and/or fractional interest(s) therein, stallion seasons and shares, and any other interest(s) in any of the above owned by [Zayat Stables], however classified, whether now owned or after-acquired, including all substitutions thereof (the "Equine Collateral")" to secure the Notes and all other obligations to Fifth Third.  The Security Agreement also grants to Fifth Third a security interest in (1) all insurance policies maintained on the Equine Collateral, (2) all accounts arising out of or in any way relating to the sale, transfer, or other conveyance of all or any interest in any of the Equine Collateral, (3) all racing income, breeder's awards income, and any other income derived from or in any way related to the Equine Collateral, (4) all certificates of title, certificates of registration and other evidences of ownership, relating to, or in any way connected with, the Equine Collateral, and (5) all proceeds and products of the Equine Collateral.  Finally, under the Security Agreement, in addition to the Equine Collateral, Zayat Stables and Pioneer also granted Fifth Third a security interest in a Zayat Stables savings account with Fifth Third.  This account contains approximately $600,000.00.

To induce Fifth Third to continue to lend money to Zayat Stables, on or about January 14, 2009, Zayat Stables principal and sole shareholder, Ahmed Zayat ("Mr. Zayat"), and Pioneer of the Nile, Ltd. ("Pioneer"), both executed separate guaranties, whereby they jointly and severally agreed to guarantee the payment of all monies due, or which may thereafter become due, to Fifth Third by Zayat Stables.

### B.     Fifth Third's Efforts to Restructure the Loan Throughout Calendar Year 2009

Zayat Stables defaulted on the Notes by, among other things, failing to make payments on the principal and interest due on March 1, 2009 and July 31, 2009.  On August 28, 2009, Fifth

Third, through counsel, sent a Notice of Default and Reservation of Rights Letter to all of the Defendants (the "Notice Letter").  The Notice Letter also demanded that Defendants provide certain information to Fifth Third and that all Equine Collateral revenue (including, but not limited to, purse money, stallion service fees, breeder's awards, sales proceeds—whether private or public—and all other proceeds from the Equine Collateral) be paid directly to Fifth Third to reduce the interest and principal owed by Defendants, as contemplated by the Security Agreement.  Zayat Stables has since defaulted on four additional notes by failing to make interest payments on some, and principal payments on others.

Notwithstanding Debtor's default and Fifth Third's demand, Fifth Third engaged the Debtor in extensive negotiations aimed at resolving the default and restructuring the Fifth Third loans.  Fifth Third proposed no less than four term sheets, on September 11, 2009, September 19, 2009, September 30, 2009 and December 30, 2009.  The September term sheet was based on financial projections Fifth Third received from Mr. Zayat.  (Exh. A, Verville Aff. ¶ 12).  The September 30, 2009 proposal to restructure the debt was based on the assumption of a cash flow shortfall consistent with Zayat Stables' projections, and Mr. Zayat's proposal to fund the shortfall.  Over the next several weeks, Mr. Zayat and his representatives provided Fifth Third with revised and conflicting sets of financial projections, making a work out difficult, if not impossible, and causing Fifth Third much discomfort.  Unable to come to a resolution on significant retrenching by Zayat Stables on the business terms, the parties scheduled a meeting for December 3rd in New Jersey to discuss the proposal.

On November 30, 2009, Fifth Third received an email from counsel for Zayat Stables and Mr. Zayat acknowledging that any new work-out plan between Fifth Third and Defendants would require an additional infusion of funds from Fifth Third to maintain the solvency of Zayat

-- 4 --

Stables. Fifth Third repeatedly requested updated financial models from Defendants to substantiate Defendants' counsel's claim that Mr. Zayat was out of money. Despite these requests, Defendants waited until December 2, 2009, the night before the December 3, 2009 meeting, to respond, and then did so by providing Fifth Third with a completely revised new set of financial projections on (the "December 2009 Projections"). The December 2009 Projections showed a revised projected cash flow for Zayat Stables of negative $4 million as of December 31, 2009 and negative $3,101,402 as of December 31, 2010, and no principal payments to Fifth Third in FY2010. In addition, Mr. Zayat was no longer willing or able to put capital into the business. (Exh. A, Verville Aff. ¶¶ 13-16). On December 7, 2009, Defendants' counsel disclosed to Fifth Third's counsel that Defendants would soon lack the cash and other assets necessary to properly care for the Equine Collateral. *Id.* at ¶ 18.

Moreover, Fifth Third actually prepared and sent draft loan documents to the Debtor that would have restructured the Debtor's obligations and simultaneously protected Fifth Third's interests on October 31, 2009, and on November 18, 2009. Zayat Stables failed to agree to these restructuring proposals that were each based on financial information Fifth Third received from Mr. Zayat.

After months of negotiating, it became clear to Fifth Third that Mr. Zayat would never agree to a restructuring that did not include a release of his personal guaranty of the loans. On December 14, 2009, Fifth Third notified Defendants by letter that it was accelerating all amounts due under the Notes and was demanding the immediate payment of all the Notes (the "Demand Letter"). After Zayat Stables refused to make payment, Fifth Third filed a Verified Complaint in the United States District Court for the Eastern District of Kentucky seeking, among other things, amounts due under the Notes, preliminary and permanent injunctive relief requiring Zayat

Stables to comply with the terms of the loan documents, foreclosure on the collateral, replevin, and the appointment of a receiver to protect Fifth Third's interest in the collateral. Despite the lawsuit, Fifth Third continued to remain open to a reasonable restructuring, and continued to negotiate with Mr. Zayat. This resulted in a term sheet dated December 30, 2009 that was sent to Zayat Stables. Zayat Stables refused to agree to the proposed restructuring.

It was only after yet another rejected restructuring proposal, and due to Zayat Stables' rapidly deteriorating financial condition, its inability to provide accurate data to Fifth Third, and the fraudulent conduct of Mr. Zayat, that Fifth Third filed an Emergency Motion for Appointment of a Receiver on January 4, 2010 so that the collateral securing the Notes could be preserved.

But even in light of this development, Fifth Third remained open to a consensual reasonable restructuring of the debt. Consistent with this position, Fifth Third agreed to postpone the emergency hearing to see if a mediator could assist in reaching a deal. A full day mediation was held, but again, Mr. Zayat refused to consider a reasonable debt restructuring.

Just prior to the District Court's hearing on Fifth Third's Emergency Motion for Appointment of a Receiver that was set for February 8, 2010, Zayat Stables filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. In conjunction with the filing of the voluntary petition, Zayat Stables also filed its Motion For An Order (A) Authorizing The Debtor's Interim And Final and Final Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363 and Granting Adequate Protection, and (B) Scheduling Final Hearing Pursuant to 11 U.S.C. § 363(c)(2) and Fed.R.Bankr.P. 4001 (the "Motion").

### III.  ARGUMENT

Pursuant to Section 363(c)(2) of the United States Bankruptcy Code, a debtor may not use, sell, or lease cash collateral, unless: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Fifth Third does not consent to the Debtor's use of its cash collateral. Therefore, under Section 363(e), this Court must prohibit the use of Fifth Third's cash collateral unless the Debtor can demonstrate, and the Court approves, conditions that provide adequate protection of Fifth Third's interest in its cash collateral. 11 U.S.C. § 363(e).

The Debtor's Motion proposes that Fifth Third's interest in cash collateral is adequately protected by a replacement lien on the Debtor's post-petition assets. While such a replacement lien may provide adequate protection in some cases, it does not approach adequate protection in this case.

In its pre-bankruptcy negotiations with Zayat Stables, Fifth Third has determined that the Debtor and its principal, Mr. Zayat, have demonstrated that they are unable or unwilling to provide the kind of financial information that is necessary for this Court to make any sort of ruling as to whether Fifth Third's interest can be adequately protected. Despite this difficulty and with much effort, Fifth Third has been able to determine that the Debtor has incurred massive losses for years prior to this bankruptcy, which it attempted to hide from Fifth Third. This apparently will continue in this case. The Debtor's own projections show that it will incur a cash loss of over $100,000.00 every week, that it will burn through all of its cash, and will then need to borrow on its debtor-in-possession loan to finance its operating losses – with no end in sight.

In addition, Fifth Third's investigation has revealed repeated examples of the Debtor's and Mr. Zayat's non-disclosure, misrepresentation, and diversion of collateral. All of these facts demonstrate that the Debtor cannot provide adequate protection of Fifth Third's interest with a simple replacement lien on post-petition assets.

### A. Debtor And Mr. Zayat Have Consistently Provided Inaccurate And Misleading Financial Information To Fifth Third

In his Affidavit filed in support of the Debtor's First-Day Motions in this case, Mr. Zayat states that the Debtor "achieved extraordinary results" in its first few years of operation. Zayat Stables provided historical financial data to Fifth Third in June 2009 showing that it suffered net losses of $51,827,969.22 over the three fiscal years of 2006-2008, and projected a net loss of $13,640,839.00 for 2009. (*Id.* ¶ 6 and Exhs. B & F). The financial data showed net losses of $10,158,144.42 in FY2006, $21,014,844.33 in FY2007, and $20,654,980.47 in FY 2008, for an accumulated net loss of $51,827,969.22 over this three year period. (Exh. 1, Verville Aff. ¶ 6 and Exh. B).

Despite these mounting losses, upon the Debtor's default, Fifth Third engaged in good faith negotiations aimed at restructuring the credit on terms that were fair to Zayat Stables and also protected Fifth Third's interests. (Exh. A, Verville Aff. ¶ 8).

As part of that process, Fifth Third sought current financial data and projections from the Debtor. (*Id.* ¶ 9). The data that Zayat Stables provided to Fifth Third in September 2009 showed a positive net cash flow at Zayat Stables of $1,865,083.00 for FY2009 and a negative net cash flow of $2,469,947.00 for FY2010, after accounting for a $5,000,000.00 principal payment to Fifth Third during FY2010. (*Id.* ¶¶ 9-10, Exh. C). Zayat Stables proposed to fund the cash flow deficit with a cash infusion from Mr. Zayat in an amount sufficient to maintain operations at

-- 8 --

Zayat Stables, care for the Equine Collateral, and service the restructured Fifth Third debt. (*Id.* ¶ 11).

A little over two months later, Zayat Stables provided Fifth Third with a completely revised set of financial projections. (*Id.* ¶ 15, Exh. F). This new set of projections showed an operation in severe financial decline, with a revised projected cash flow for Zayat Stables of negative $4,000,000.00 for FY2009 and a loss of $3,101,402.00 for FY2010, without any principal payments to Fifth Third in FY2010. (*Id.*). Based upon this history of providing incorrect and misleading financial information, the projections provided by the Debtor in support of its use of cash collateral cannot be trusted.

### B. Debtor And Mr. Zayat Have Placed Fifth Third's Equine Collateral At Risk

In the course of its negotiations with the Debtor and through the litigation in the Eastern District of Kentucky, Fifth Third has discovered a number of facts that prove that its Equine Collateral is at risk. First, the horses are woefully underinsured. Second, the Debtor has consistently and knowingly diverted proceeds of Fifth Third's cash collateral, and hidden collateral from Fifth Third.

#### 1. The Equine Collateral Is Underinsured.

Under Section 5 of the Security Agreement, the Debtor is required to maintain mortality insurance on the Equine Collateral (with Fifth Third named as the loss payee) in an amount not less than 100% of the maximum indebtedness under the Notes. In June 2009, Zayat Stables told Fifth Third that it had $25 million of insurance in place. Either that statement was untrue when made or the Debtor subsequently let virtually all of its insurance lapse without advising Fifth Third. Debtor admits in its Motion that it now has only $7.75 million in mortality insurance on the Equine Collateral. This is less than 8% of the required insurance. It is well settled that the

adequate protection of a secured party's interest in collateral requires that the collateral be insured. *See, e.g.*, 3 <u>Collier on Bankruptcy</u>, ¶ 361.03[4]; *In re Davis*, 989 F2d 208, 212 (6th Cir. 1993); *In re Delaney-Morin*, 304 B.R. 365 (Bankr. App. 9th Cir. 2003); *In re Elmiro Litho, Inc.*, 174 B.R. 892, 902 n.9 (Bankr. S.D.N.Y. 1994). Fifth Third's interest in its cash collateral is not adequately protected if the collateral that produces that cash – the Equine Collateral – is not adequately protected. The Debtor must provide for the Equine Collateral to be insured at least to the full value of each horse, with Fifth Third named as a loss payee, before this Court can determine that Fifth Third is adequately protected.

### 2. Zayat Stables Diverted Proceeds From The Collateral Away From The Repayment Of The Notes.

Zayat Stables' previous diversion of Equine Collateral proceeds away from repayment on the Notes further demonstrates that Zayat Stables should not be permitted to use the cash collateral.

The diversion of payments from the repayment of the Notes has diminished the value of the Equine Collateral. Pursuant to the loan documents, Fifth Third's security interest extends to proceeds derived from the Equine Collateral. This includes cash that Zayat Stables collect from the sale of horses and from racing purses and insurance proceeds. In derogation of Fifth Third's security interest, Zayat Stables has diverted proceeds from the Collateral away from the repayment of the Notes. (Verville Aff. ¶ 20). Based on information that Zayat Stables provided to Fifth Third on December 2, 2009, as of September 30, 2009, Zayat Stables earned $6,500,000.00 from stallion sales; $1,808,519.00 from private horse sales; and $278,500.00 from claiming revenue. Despite $8,408,519.00 in revenue from the sale of horses subject to Fifth Third's security interest, Zayat Stables has used only $3,300,000.00 to pay down the principal on the Notes.

Additionally, Fifth Third discovered that Zayat Stables has diverted to itself $2,750,000.00 of insurance proceeds that should have been paid over to Fifth Third. After receiving information that a horse named "Thorn Song" was injured in a race, Fifth Third made multiple inquiries of the Defendants as to the whereabouts and well-being of Thorn Song, and whether that animal is an insurance loss. Zayat Stables failed to respond to any of those inquiries. (*Id.*)[1]

In the course of discovery in the receivership case, Fifth Third uncovered documentation proving that the Debtor made a claim for and received an insurance payment of $2,750,000.00 under the mortality policy for Thorn Song on August 2, 2009. That evidence is attached as Exhibit B. Again, the pattern of nondisclosure, misrepresentation and diversion of cash proceeds of collateral makes it impossible for this Court to find that Fifth Third will be adequately protected by a replacement lien.

### C. Mr. Zayat Concealed Material Information From Fifth Third

Mr. Zayat is the sole owner of Zayat Stables and guaranteed Fifth Third's loans to the Debtor. Just prior to filing its lawsuit in the Eastern District of Kentucky, Fifth Third discovered that Mr. Zayat either falsified his name or concealed a current or former pseudonym when completing the loan documents, in violation of sworn statements he provided to Fifth Third. At the loan closings, Mr. Zayat was required to execute documents titled "Individual Name Affidavit," in which Mr. Zayat was to certify his legal name and signature to Fifth Third. (Exh. A, Verville Aff. ¶ 3, Exh. A). As part of the Zayat Affidavits, Mr. Zayat was asked to provide all pseudonyms. (*Id.*) The documents explicitly instructed him that he should, "[i]f

---

[1] In derogation of its obligation under the Loan Documents, Fifth Third has also learned that Zayat Stables failed to name Fifth Third as a loss payee under some or all of its policies insuring the horses.

applicable, complete the following: I am also known as: _____." (*Id.* at Exh. A). Mr. Zayat left this space blank. (*See id.*) He then attested:

> I swear and affirm that *I have never used any name variation listed above* or elsewhere in *an attempt to avoid any legal obligations*. I further swear and affirm that should my legal name change at any time while my obligations to the Lender remain outstanding, I will immediately notify the Lender of my new name. After carefully reading the foregoing affidavit, I do hereby *solemnly swear* that the facts as set forth herein *are true and correct*.

(*Id.* (emphasis added)).

Despite this attestation, Mr. Zayat failed to disclose that in 1993, he had filed a personal Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey as "Ephraim David Zayat," and received a discharge of his debts in that case. (Exh. C). Mr. Zayat failed to disclose that he does or did go by the name "Ephraim David Zayat" to Fifth Third in breach of the Individual Name Affidavits he executed in conjunction with Fifth Third's agreement to extend the credit at issue in this case. If he had, of course, Fifth Third would have discovered the prior bankruptcy of Mr. Zayat and his spouse and could have taken that into account in negotiating the original loan terms, and in deciding whether to extend the credit at all.

Here, the evidence shows that Mr. Zayat filed a bankruptcy petition and received a bankruptcy discharge of his debts under the name "Ephraim David Zayat."[2] (Exh. C). Yet, when it came time to sign the documentation for millions of dollars in loans, for which Mr. Zayat is personally liable, Mr. Zayat did not disclose his alias, despite explicit instructions in the loan

---

[2] Other information exists indicating the Ahmed Zayat goes by another name at times. By way of example, Senator Frank Lautenberg of New Jersey publicly recognized New Jersey resident "Ephraim Zayat," who Senator Lautenberg noted was the "the executive chair and CEO of Heineken, Egypt." 149 Cong. Rec. 37, S3367-S3368 (March 7, 2003) (statement of Sen. Lautenberg). This statement corroborates common knowledge in the horseracing industry that Mr. "Ahmed" Zayat is "best known for the privatization of Al Ahram Beverages Company (ABC), which was later sold to Heineken International after turning into the largest beverage manufacturer and distributor in the Middle East." (*See* National Thoroughbred Racing Association, Zayat Stables biography and highlights, *available at* http://www.ntra.com/stats_bios.aspx?id=21125).

documents to provide all pseudonyms and affirm that he had not used any other name to avoid any legal obligation (i.e., the discharge of legal debts through a bankruptcy). (Exh. A, Verville Aff. ¶ 3 and Exh. C). This inconsistency - on a document that Mr. Zayat provided to procure enormous sums from Fifth Third - raises serious concerns that Defendants will perpetrate a fraud upon Fifth Third, if they have not already done so. Furthermore, Fifth Third has discovered yet another alias for Mr. Zayat. On December 12, 2002, in the Superior Court of New Jersey in Bergen County, Ahmed Alaa Ahmed Hassan El-Zayat changed his name to Ahmed Zayat. This is now a third name that Mr. Zayat has used, but never disclosed to Fifth Third.

These inconsistencies on documents that Mr. Zayat provided to procure millions of dollars of loans from Fifth Third, loans he personally guaranteed, and in general his use of at least three aliases over the past 17 years, demonstrates a pattern of dishonesty that instructs this Court that any interim use of cash collateral must be on the most restrictive of conditions.

## IV.  **CONCLUSION**

Based on all of the foregoing, Fifth Third requests that Zayat Stables' Motion For An Order (A) Authorizing The Debtor's Interim And Final Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363 and Granting Adequate Protection, and (B) Scheduling Final Hearing Pursuant to 11 U.S.C. § 363(c)(2) and Fed.R.Bankr.P. 4001 be denied or in the alternative, that any interim use of Fifth Third's cash collateral be only for a period of time sufficient to allow the Court to schedule a hearing on Fifth Third's motion for appointment of a trustee which will be filed early next week, and conditioned as follows: (1) that Zayat Stables provide an accounting sufficient to identify whose cash collateral is being used (*i.e.*, Fifth Third's or Keeneland's; (2) that Zayat Stables provide a detailed accounting of the use of the cash collateral on a weekly

basis; and (3) that Zayat Stables provide insurance on the full value of Fifth Third's Equine Collateral.

Dated: February 4, 2010

                                LOWENSTEIN SANDLER PC

By:  /s/ Jeffrey D. Prol
     Jeffrey D. Prol, Esq. (JP 7454)
     65 Livingston Avenue
     Roseland, New Jersey 07068
     (973) 597-2500 (Telephone)
     (973) 597-2400 (Facsimile)

     -and-

     Michael L. Scheier, Esq. (*pro hac vice* pending)
     Robert G. Sanker, Esq. (*pro hac vice* pending)
     James A. Burke, Esq. (*pro hac vice* pending)
     KEATING MUETHING & KLEKAMP, PLL
     One East Fourth Street
     Suite 1400
     Cincinnati, OH 45202
     (513) 579-6400 (Telephone)
     (513) 579-6457 (Facsimile)

     Counsel to Fifth Third Bank

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 4, 2010, the undersigned electronically filed the foregoing FIFTH THIRD BANK'S MEMORANDUM IN OPPOSITION TO MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTOR'S INTERIM AND FINAL USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND GRANTING ADEQUATE PROTECTION, AND (B) SCHEDULING A FINAL HEARING PURSUANT TO 11 U.S.C. § 363(C)(2) AND FED.R.BANKR.P. 4001 via the Court's CM/ECF system which will send notice of such filing to ECF participants.

                                          */s/ Jeffrey D. Prol*
                                          Jeffrey D. Prol

3314369.1