**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Telecopier
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Attorneys for Debtor-in-Possession,
Zayat Stables, LLC,

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
HONORABLE DONALD H. STECKROTH
CASE NO. 10-13130 (DHS)

In re:

ZAYAT STABLES, LLC,

        Debtor-in-Possession.

Chapter 11

**NON-MATERIAL MODIFICATIONS TO DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION**

      Zayat Stables, LLC, the within debtor and debtor-in-possession (the "Debtor"), by and through its counsel, Cole, Schotz, Meisel, Forman & Leonard, P.A., hereby submit these Non-Material Modifications to the Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated June 9, 2010 (the "Second Amended Plan").[1]

      The Debtor seeks to make certain non-material modifications to the Second Amended Plan. Such modifications will have no material impact upon the treatment of creditors other than

---

[1] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Second Amended Plan filed at Docket No. 130.

Fifth Third Bank ("Fifth Third") and Vinery, Ltd. ("Vinery"). Both Fifth Third and Vinery have agreed to the modifications, which are as follows:

1. The Debtor hereby inserts Article I, Section 1.118 of the Second Amended Plan, and all definitions thereafter are adjusted accordingly. Section 1.118 of the Second Amended Plan provides as follows:

> 1.118. "Vinery Agreements" means collectively the (i) Pioneerof The Nile Syndicate Agreement dated August 31, 2009, (ii) Maimonides Stallion Management Agreement dated September 10, 2009, and (iii) J Be K Stallion Management Agreement dated January 29, 2010.

2. The Debtor hereby amends its "TABLE OF EXHIBITS" on page vi of the Second Amended Plan as follows:

TABLE OF EXHIBITS

EXHIBIT A    FIFTH THIRD AMENDED LOAN DOCUMENTS

EXHIBIT B    KEENELAND HORSES

EXHIBIT C    EXECUTORY CONTRACTS CURE AMOUNTS

3. Article II, Section 2.3.E of the Second Amended Plan is deleted in its entirety and replaced with the following:

> (a) Classification. Class 2 consists of the Fifth Third Claim against the Debtor which shall be Allowed in the amount of $28,152,242.46.
>
> (b) Treatment. The Class 2 Fifth Third Claim shall be repaid, restructured and re-amortized in accordance with the Fifth Third Amended Loan Documents in substantially the form attached hereto as Exhibit A. The Holder of the Fifth Third Claim shall, in full, final, and complete satisfaction of such Allowed Fifth Third Claim, be paid in Cash one hundred (100%) percent of its Allowed Fifth Third Claim in installments in accordance with the Fifth Third Payment Schedule on the applicable Fifth Third Payment Dates; provided, however, that the Reorganized Debtor is entitled to make Cash payments to Fifth Third on account of the Allowed Fifth Third Claim at any time without penalty.

2

The Fifth Third Interest Payment Schedule is as follows:

(i) <u>First Interest Payment Date</u>: Accrued interest as of June 30, 2010 at the existing contract rate (prime minus 1%) of $623,201.56 shall be paid by the Debtor in Cash to Fifth Third on or before June 30, 2010.

(ii) <u>Monthly Interest Payment Dates</u>: After the Effective Date, the Reorganized Debtor shall pay monthly interest in arrears at a rate per annum equal to LIBOR plus 300 basis points.

The Fifth Third Principal Payment Schedule is as follows:

(iii) <u>First Principal Payment Date</u>: (a) Fifth Third and the Debtor agree that the principal balance of the Fifth Third Consolidated Loan was reduced by $607,569.50 by virtue of the Cash Collateral Order; and (b) on or before June 30, 2010, the Debtor shall further reduce the principal of the Fifth Third Consolidated Loan by an additional $5,476,798.44.

(iv) <u>Second Principal Payment Date</u>: On or before December 31, 2011, the Reorganized Debtor shall reduce the principal of the Fifth Third Consolidated Loan by an amount equal to (a) 40% of the proceeds from the sale of all horses during calendar year 2011 up to $10 million, (b) 50% of the proceeds from the sale of all horses during calendar year 2011 in excess of $10 million, and (c) 40% of the proceeds from claiming races during calendar year 2011 in excess of $495,000; <u>provided</u>, <u>however</u>, that inclusive of the foregoing, the Reorganized Debtor shall make a minimum mandatory principal payment pursuant to this subparagraph of $4.0 million.

(v) <u>Third Principal Payment Date</u>: On or before December 31, 2012, the Reorganized Debtor shall reduce the principal of the Fifth Third Consolidated Loan by an amount equal to (a) 50% of the proceeds from the sale of all horses during calendar year 2012, and (b) 50% of the proceeds from claiming races during calendar year 2012 in excess of $520,000; <u>provided</u>, <u>however</u>, that inclusive of the foregoing, the Reorganized Debtor shall make a minimum mandatory principal payment pursuant to this subparagraph of $3.25 million.

(vi) <u>Fourth Principal Payment Date</u>: On or before December 31, 2013, the Reorganized Debtor shall reduce the principal of the Fifth Third Consolidated Loan by an amount equal to (a) 50% of the proceeds from the sale of all horses during calendar year 2013, and (b) 50% of the proceeds from claiming races during calendar

3

year 2013 in excess of $540,000; provided, however, that inclusive of the foregoing, the Reorganized Debtor shall make a minimum mandatory principal payment pursuant to this subparagraph of $3.25 million.

(vii)   Fifth Principal Payment Date:  On or before December 31, 2014 (the "Extended Maturity Date"), the Reorganized Debtor shall make a balloon payment of the unamortized balance of the Fifth Third Consolidated Loan.

All principal payments due from the sale and claiming of horses in accordance with the above sharing formulas are due within 60 days of the Reorganized Debtor's receipt of proceeds from the sale and claiming of horses.  All principal payments received by Fifth Third throughout each calendar year shall be credited towards Reorganized Debtor's minimum mandatory principal payment per calendar year.

All liens, rights, priorities, security interests and other encumbrances and rights granted to Fifth Third against the Fifth Third Collateral shall remain in full force and effect despite the confirmation of the Plan and entry of the Confirmation Order.

Other material terms of the Debtor's proposed treatment of Fifth Third as more specifically described in the Fifth Third Amended Loan Documents are as follows:

(viii)   Fifth Third Expenses.  On or before December 31, 2011, 2012, 2013 and 2014, the Debtor shall pay Fifth Third $125,000 each year in full satisfaction for the Debtor's obligation to pay Fifth Third's expenses incurred through consummation of the settlement between the Debtor and Fifth Third.  This obligation shall not accrue interest thereon.  Other than these agreed payments, the parties shall bear their own expenses for any expenses incurred prior to and including the Effective Date of the Plan and consummation of the settlement.

(ix)   Collateral.  Collateral as per the Fifth Third Amended Loan Documents.  See Ex. A, Section 2.1 of Security Agreement.

(x)   Events of Default.  Customary as per the Fifth Third Amended Loan Documents, including without limitation non-payment, incorrect or misleading representation, non-compliance with terms and conditions, failure to provide required and/or requested financial information; breach of terms of loan documents.  See Ex. A, Section 6 of Amended and Restated Credit Agreement.

4

    (xi)    <u>Financial Reporting</u>.  Quarterly unaudited balance sheet, income statement, statement of cash flows and equineline inventory report with sufficient detail to reconcile current quarter's equineline report with previous quarter's equineline report to be presented to Fifth Third on or before 45 days following the close of each quarter, beginning after the Effective Date.  In addition, Fifth Third shall be given access to the Debtor's equineline account.  Annual reviewed balance sheet, income statement and statement of cash flows to be presented to Fifth Third on or before 120 days following the close of the year.  Tax returns to be presented to Fifth Third on or before 30 days after filing.

    (xii)    <u>Reaffirmation of Zayat Guaranty and Pioneer Guaranty</u>.  Reaffirmation of Zayat Guaranty and Pioneer Guaranty based on the Fifth Third Consolidated Loan.

    (d) <u>Impairment and Voting</u>.  Class 2 is Impaired under the  Plan.  Therefore, the Holder of the Class 2 Fifth Third Claim is entitled to vote to accept or reject the Plan.

4.    Article IV, Section 4.3 of the Second Amended Plan is deleted in its entirety and replaced with the following:

    4.3.    <u>Amended Loan Documents with Fifth Third</u>.  On or prior to the Effective Date, the Reorganized Debtor and Fifth Third shall enter into the Fifth Third Amended Loan Documents, in substantially the form annexed hereto as Exhibit A, under which the Reorganized Debtor will restructure, modify and amend the Fifth Third Loan Documents in order to extend the maturity date of the Fifth Third Loans, re-amortize the repayment of the Allowed Fifth Third Claim, and reaffirm the liens of Fifth Third against the Fifth Third Collateral.

5.    Article VII, Section 7.1 of the Second Amended Plan is deleted in its entirety and replaced with the following:

    7.1.    <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the Lease Agreement and Vinery Agreements shall be deemed assumed by the Debtor and assigned to the Reorganized Debtor as of the Effective Date.  The Debtor reserves the right, at any time prior to the Confirmation Date, to seek to assume any Executory Contract or unexpired lease to which the Debtor is a party.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the

5

>assumption and assignment of the contract and lease assumptions described above as of the Effective Date. Upon the Effective Date, the counter party to the Lease Agreement and Vinery Agreements shall be deemed to have consented to the assumption of the Lease Agreement and Vinery Agreements contemplated by Bankruptcy Code section 365(c)(1)(B), to the extent such consent is necessary for such assumption.

6. Article VII, Section 7.2 of the Second Amended Plan is deleted in its entirety and replaced with the following:

> 7.2. <u>Cure of Defaults Under Assumed Executory Contracts and Unexpired Leases</u>. Except as may otherwise be agreed to by the parties, within ninety days after the Effective Date, or as due in the ordinary course of business, the Reorganized Debtor shall cure any and all undisputed defaults under the Lease Agreement and Vinery Agreements and any other assumed Executory Contracts and unexpired leases in accordance with section 365(b)(1) of the Bankruptcy Code. Notice of the cure amount for the Lease Agreement and Vinery Agreements is set forth on Schedule 1 to the Plan. Notwithstanding the foregoing, in the event of a dispute regarding (i) the nature or amount of any cure obligation, (ii) the ability of the Debtor or any assignee to provide "adequate assurances of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Lease Agreement or Vinery Agreements, or (iii) any other matter pertaining to any such assumption, the cure obligation shall be satisfied no later than thirty (30) days of the entry of a Final Order determining the obligation, if any, of the Debtor with respect thereto, or as may otherwise be agreed to by the parties.
>
> A. <u>Cure Procedure</u>. The Plan and Schedule 1 shall constitute notice to the non-Debtor counterparties to the Lease Agreement and Vinery Agreements of the amount of any cure amount owed, if any, under the Lease Agreement and Vinery Agreements. **If said non-Debtor counterparties fail to respond or object on or before the deadline scheduled by the Bankruptcy Court for objections to the Plan, it shall be deemed to have consented to such proposed cure amount for all purposes in the Chapter 11 Case.**

7. Article VII, Section 7.6 of the Second Amended Plan is deleted in its entirety and replaced with the following:

6

7.6. **Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, all Executory contracts and unexpired leases will be deemed rejected, other than: (i) the Lease Agreement, (ii) the Vinery Agreements; (iii) the Insurance Policies, (iv) the Indemnification Obligations, (v) the Compensation and Benefit Plans, and (vi) any other Executory contracts and unexpired leases that the Debtor seeks to assume prior to the Confirmation Date. The Confirmation Order shall constitute an order approving such rejection as of the Effective Date.

8. Schedule 1 to the Second Amended Plan is deleted in its entirety and replaced with the following:

| Counterparty to Executory Contract | Address of Counterparty to Executory Contract | Description of Executory Contract | Proposed Cure Amount |
|---|---|---|---|
| MSNW Continental Associates, LLC | 1776 On the Green<br>67 Park Place East, 8th Floor<br>Morristown, NJ 07960 | The Lease Agreement for corporate headquarters at 401 Hackensack Avenue, Hackensack, New Jersey, dated July 19, 2006. | $0 |
| Vinery Ltd. | 4241 Spurr Road,<br>Lexington, KY 40511-9047 | The (i) Pioneerof The Nile Syndicate Agreement dated August 31, 2009, (ii) Maimonides Stallion Management Agreement dated September 10, 2009, and (iii) J Be K Stallion Management Agreement dated January 29, 2010. | $32,252.43 |

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Zayat Stables, LLC

By: */s/ Warren A. Usatine*
    Michael D. Sirota
    Warren A. Usatine

DATED: June 30, 2010

48051/0001-6826934v2