**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
(201) 489-3000
(201) 489-1536 Facsimile
Attorneys for Zayat Stables, LLC,
Debtor-in-Possession

|  |  |
|---|---|
| | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY HONORABLE DONALD H. STECKROTH CASE NO. 10-13130 (DHS) |
| In re:<br><br>ZAYAT STABLES, LLC,<br><br>     Debtor-in-Possession. | Chapter 11 |

---

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S**
**SECOND AMENDED PLAN OF REORGANIZATION**

---

On the Brief:
 Michael D. Sirota
 Warren A. Usatine
 Ryan T. Jareck

**HEARING DATE AND TIME:**
July 15, 2010, at 10:00 a.m.

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS ..............................................................................2

LEGAL ARGUMENT.....................................................................................2

I.      SECTION 1129(a)(1):  THE AMENDED PLAN COMPLIES WITH THE
        APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE.........................3

II.     SECTION 1129(a)(2):  THE DEBTOR, AS THE PLAN PROPONENT,
        HAS COMPLIED WITH THE BANKRUPTCY CODE....................................21

III.    SECTION 1129(a)(3):  THE AMENDED PLAN HAS BEEN
        PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS
        FORBIDDEN BY LAW ...............................................................................24

IV.     SECTION 1129(a)(4):  THE AMENDED PLAN PROVIDES THAT
        FEES AND EXPENSES ARE SUBJECT TO COURT APPROVAL.................25

V.      SECTION 1129(a)(5):  THE DEBTOR HAS DISCLOSED ALL
        NECESSARY INFORMATION REGARDING OFFICERS,
        DIRECTORS AND INSIDERS.....................................................................26

VI.     SECTION 1129(a)(6) IS NOT APPLICABLE......................................................26

VII.    THE AMENDED PLAN SATISFIES THE REQUIREMENTS OF
        SECTION 1129(a)(7) OF THE BANKRUPTCY CODE....................................27

VIII.   SECTION 1129(a)(8):  THE AMENDED PLAN HAS BEEN
        ACCEPTED BY ALL IMPAIRED CLASSES AND, AS TO SUCH
        CLASSES, THE REQUIREMENTS OF SECTION 1129(a)(8) HAVE
        BEEN SATISFIED ......................................................................................29

IX.     SECTION 1129(a)(9):  THE AMENDED PLAN PROVIDES FOR
        PAYMENT IN FULL OF ALL ALLOWED ADMINISTRATIVE AND
        PRIORITY CLAIMS ...................................................................................29

X.      SECTION 1129(a)(10):  AT LEAST ONE CLASS OF IMPAIRED
        CLAIMS HAS ACCEPTED THE AMENDED PLAN.......................................30

XI.     SECTION 1129(a)(11):  CONFIRMATION OF THE AMENDED PLAN
        IS NOT LIKELY TO BE FOLLOWED BY LIQUIDATION OR THE
        NEED FOR FURTHER REORGANIZATION OF THE DEBTOR ...................31

i

XII.    SECTION 1129(a)(12):  ALL STATUTORY FEES HAVE BEEN OR
WILL BE PAID ........................................................................................33

XIII.    SECTION 1129(a)(13), 1129(a)(14), 1129(a)(15) AND 1129(a)(16) ARE
NOT APPLICABLE ..................................................................................33

XIV.    THE PRINCIPAL PURPOSE OF THE AMENDED PLAN IS NOT THE
AVOIDANCE OF TAXES AND COMPLIES WITH SECTION 1129(d) ..........34

XV.    THE MODIFICATIONS TO THE AMENDED PLAN DO NOT
ADVERSELY CHANGE THE TREATMENT OF THE CLAIM OF ANY
CREDITOR AND, THEREFORE, VOTES IN FAVOR OF THE
AMENDED PLAN SHALL BE DEEMED VOTES IN FAVOR
THEREOF, AS MODIFIED ........................................................................34

CONCLUSION ........................................................................................................36

48051/0001-6800850v4

# TABLE OF AUTHORITIES

**Page(s)**

CASES

In re Adelphia Commc'n Corp., 361 B.R. 337 (S.D.N.Y. 2007).....................................................2

In re Adley, 333 B.R. 587 (Bankr. D. Mass. 2005) ...............................................................14

In re Airadigm Commc'n, Inc., 519 F.3d 640 (7th Cir. 2008).............................................12, 15

In re Am. Family Enter., 256 B.R. 377 (D.N.J. 2000)...................................................11, 14, 15, 16

In re Armstrong World Indus., Inc., 348 B.R. 111 (Bankr. D. Del. 2006) ....................................2

In re Armstrong World Indus., Inc., 348 B.R. 136 (D. Del. 2006)..............................................31

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434 (1999) .........27

In re Bernhard Steiner Pianos USA, Inc., 292 B.R. 109 (Bankr. N.D. Tex. 2002) ......................19

In re Burns & Roe Enters., Case No. 00-41610 (RG) 2009 WL 1372251 (D.N.J. 2009) .............35

In re Chateaugay Corp., 155 B.R. 625 (Bankr. S.D.N.Y. 1993).....................................................4

In re Congoleum Corp., 362 B.R. 167 (Bankr. D.N.J. 2007) ...................................................15, 31

In re Cont'l Airlines, Inc., 177 B.R. 475 (D. Del. 1993) ...............................................................16

In re Dow Corning Corp., 280 F.3d 648 (6th Cir. 2002) ...............................................................13

In re Elsinore Shore Assocs., 91 B.R. 238 (Bankr. D.N.J. 1988).................................................25

Enron Corp. v. New Power Co. (In re New Power Co.), 438 F.3d 1113 (11th Cir. 2006).............35

Fairfield Executive Assocs. v. Hyperion Credit Capital Partners, L.P., 161 B.R. 595
    (D.N.J. 1993)........................................................................................................................3, 4

In re Family Health Servs., Inc., 105 B.R. 937 (Bankr. C.D. Cal. 1989) ......................................16

Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746 (5th Cir.1995).................................................19

In re G-1 Holdings Inc., 420 B.R. 216 (D.N.J. 2009).................................................................3, 35

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D.Del. 2001)...............................14, 15

Gillman v. Continental Airlines (In re Continental Airlines)
    203 F.3d 203 (3d Cir. 2000)........................................................................................12, 13, 18

48051/0001-6800850v4

In re Great Bay Hotel and Casino, Inc., 251 B.R. 213 (Bankr. D.N.J. 2000) ....................3, 31, 32

Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter., Ltd. II),
    994 F.2d 1160 (5th Cir. 1993) ........................................................................................2

In re Jersey City Med. Ctr., 817 F.2d 1055 (3d Cir. 1987).......................................................3

John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assoc., 987 F.2d 154 (3d
    Cir. 1993) ..........................................................................................................................4

Kane v. Johns-Manville Corp., 843 F.2d ...........................................................21, 24, 31

Koelbl v. Glessing (In re Koelbl), 751 F.2d 137 (2d Cir. 1984)......................................24

In re Lomas Fin. Corp., 117 B.R. 64 (S.D.N.Y. 1990) ...................................................16

In re Master Mortgage Inv. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994)....................14, 15

N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513 (1984) ...................................................24

In re N11 Holdings, 288 B.R. 356 (Bankr. D. Del. 2002) ...............................................31

In re Nickels Midway Pier, LLC, 341 B.R. 486 (D.N.J. 2006) ........................................8

In re One Times Square Assocs. Ltd. P'ship, 159 B.R. 695 (Bankr. S.D.N.Y. 1993).................31

Pepper v. Litton, 308 U.S. 295 (1939)..........................................................................12

In re Philadelphia Newspapers, LLC, 407 B.R. 606 (E.D. Pa. 2009)......................................16, 17

In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000)...........................................15, 20

In re Resorts Int'l, 145 B.R. 412 (Bankr. D.N.J. 1990) ...................................................25

In re Seatco, 257 B.R. 469 (Bankr. N.D. Tex. 2001)......................................................19

In re SGL Carbon Corp., 200 F.3d 154 (3d Cir. 1999)...................................................24

Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36 (3d Cir. 1989).....................8, 9

In re Spansion, Inc., Case No. 09-10960 (KJC), 2010 WL 1292837 (Bankr. D. Del. Apr.
    1, 2010) ........................................................................................................................18, 19

In re Sun Country Dev., Inc., 764 F.2d 406 (5th Cir. 1985)............................................24

In re Temple Zion, 125 B.R. 910 (Bankr. E.D. Pa. 1980) ..............................................32

In re The Leslie Fay Cos., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) .................................31

iv

In re U.S. Truck Co., Inc., 47 B.R. 932 (E.D. Mich. 1985), aff'd, 800 F.2d 581 (6th Cir. 1986) ................................................................................................................31

In re U.S. Truck Co., Inc., 800 F.2d 581 (6th Cir. 1986)................................................4

United States v. Energy Resources Co., Inc., 495 U.S. 545 (1990)................................12

Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845 (Bankr. W.D. Pa. 1987).......................................................8, 9

In re Zenith Electronics, Inc., 241 B.R. 92 (Bankr. D. Del. 1999) ...................14, 17, 18

## Statutes

11 U.S.C. § 105................................................................................................................12

11 U.S.C. § 365.........................................................................................................8, 9, 20

11 U.S.C. § 330................................................................................................................25

11 U.S.C. § 503.....................................................................................................29, 30, 33

11 U.S.C. § 524...........................................................................................................11, 12

11 U.S.C. § 1114...............................................................................................................33

11 U.S.C. § 1122.........................................................................................................3, 4, 5

11 U.S.C. § 1123...........................................................................3, 4, 5, 6, 7, 8, 9
.......................................................................................................10, 11, 12, 20
.......................................................................................................20, 21, 27, 34

11 U.S.C. § 1125...................................................................................................21, 22, 23

11 U.S.C. § 1126...............................................................................................23, 29, 30, 27

11 U.S.C. § 1127........................................................................................................34, 35

11 U.S.C. § 1129...........................................................................................1, 2, 3, 21,
.......................................................................................................23, 24, 25, 26,
.......................................................................................................27, 28, 29, 30,
.......................................................................................................31, 33, 34, 36

§ 5 of the Securities Act of 1933 ...................................................................................34

## Rules

Fed. R. Bankr. P. 3019(a) .........................................................................................35, 36

Rule 65 of the Federal Rule of Civil Procedure.......................................................................22, 25

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595, at 412 (1977).........................................................................................3, 21

S. Rep. No. 95-989, at 126 (1978) ............................................................................................3, 21

48051/0001-6800850v4

## PRELIMINARY STATEMENT[1]

This Memorandum of Law is submitted on behalf of Zayat Stables, LLC, the within

debtor and debtor-in-possession (the "Debtor"), pursuant to Section 1129 of Title 11 of the

United States Code (the "Bankruptcy Code"), in support of confirmation of the Debtor's Second

Amended Plan of Reorganization, dated as of June 9, 2010 [Docket No. 130], (the "Second

Amended Plan").  For the reasons articulated herein, the Debtor submits that the Amended Plan

should be confirmed.

On June 9, 2010, the Court approved the Second Amended Disclosure Statement (the

"Amended Disclosure Statement") for the Debtor's Second Amended Plan, as modified pursuant

to the non-material modifications to the Second Amended Plan [Docket No. 148] (the "Non-

Medical Modifications," and together with the Second Amended Plan, collectively referred to

herein as the "Amended Plan").  The Court also granted the Debtor's motion to approve certain

solicitation and voting procedures in connection therewith.  Thereafter, the Debtor solicited

acceptances of the Amended Plan from creditors entitled to vote thereon.  The solicitation period

has concluded and creditors have unanimously accepted the Amended Plan.  Moreover, the

Official Committee of Unsecured Creditors (the "Committee") believes that the Amended Plan

presents the most advantageous outcome for all the Debtor's unsecured creditors and

wholeheartedly supports confirmation of the Amended Plan.

The Court's June 9, 2010 Order fixed July 8, 2010 as the date by which objections to

confirmation of the Amended Plan were to be filed.  No party-in-interest has objected to

confirmation of the Amended Plan.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms
in the Amended Plan (defined herein).

**STATEMENT OF FACTS**

The pertinent and salient facts relating to this Chapter 11 case are set forth in the: (a) Affidavit of Ahmed Zayat submitted in support of the Debtors' "First Day Motions" [Docket No. 2]; (b) Amended Disclosure Statement; (c) Amended Plan; (d) Affidavit of Ahmed Zayat submitted in support of confirmation of the Amended Plan [Docket No. 159] (the "Zayat Affidavit"); (e) Affidavit of Bernard A. Katz submitted in support of confirmation of the Amended Plan [Docket No. 161] (the "Katz Affidavit"); and (f) Affidavit of Jeffrey A. Seder submitted in support of confirmation of the Amended Plan [Docket No. 160] (the "Seder Affidavit").  Those facts are incorporated herein by reference.

**LEGAL ARGUMENT**

To confirm the Amended Plan, the Debtor must demonstrate that it satisfies the applicable provisions of Section 1129 of the Bankruptcy Code by a preponderance of the evidence.  Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter., Ltd. II), 994 F.2d 1160, 1165 (5th Cir. 1993); see also In re Armstrong World Indus., Inc., 348 B.R. 111, 120 (Bankr. D. Del. 2006); In re Adelphia Commc'n Corp., 361 B.R. 337, 364-65 (S.D.N.Y. 2007).

Through the Zayat, Katz and Seder Affidavits filed in support of confirmation of the Amended Plan, and additional testimonial evidence which will be adduced at the confirmation hearing, if needed, the Debtor will demonstrate that all applicable subsections of 1129 of the Bankruptcy Code have been satisfied with respect to the Amended Plan.  Accordingly, the Amended Plan should be confirmed.

48051/0001-6800850v4

## I.    SECTION 1129(a)(1):  THE AMENDED PLAN COMPLIES WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE

Section 1129(a)(1) of the Bankruptcy Code requires that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(1).  The legislative history of Section 1129(a)(1) informs that this provision encompasses the requirements of Sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan, respectively.  H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); see also In re G-1 Holdings Inc., 420 B.R. 216, 258 (D.N.J. 2009); In re Greate Bay Hotel and Casino, Inc., 251 B.R. 213, 233 (Bankr. D.N.J. 2000).

As demonstrated herein, the Amended Plan fully complies with the requirements of Sections 1122, 1123, and all other applicable provisions of the Bankruptcy Code.

### A.    The Amended Plan Complies With Section 1122 of the Bankruptcy Code

Section 1122(a) of the Bankruptcy Code provides, in pertinent part:

> Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).

Section 1122 of the Bankruptcy Code does not require that all substantially similar claims or interests be classified in the same class, but only that claims or interests contained in a particular class must be substantially similar to each other.  See In re Jersey City Med. Ctr., 817 F.2d 1055, 1060-61 (3d Cir. 1987); Fairfield Executive Assocs. v. Hyperion Credit Capital Partners, L.P., 161 B.R. 595, 600 (D.N.J. 1993).  A plan proponent has flexibility in classifying claims, so long as some reasonable basis exists for the classification or the creditor agrees to the classification of its claim.  Jersey City Med. Ctr., 817 F.2d at 1060-61 ("Congress intended to

3

afford bankruptcy judges broad discretion [under Section 1122 of the Bankruptcy Code] to

decide the propriety of plans in light of the facts of each case"); John Hancock Mutual Life Ins.

Co. v. Route 37 Business Park Assoc., 987 F.2d 154, 158 (3d Cir. 1993) ("[T]he classification of

the claims or interests must be reasonable"); In re U.S. Truck Co., Inc., 800 F.2d 581, 586 (6th

Cir. 1986) (courts are given "broad discretion" to determine proper classification); In re

Chateaugay Corp., 155 B.R. 625, 632 (Bankr. S.D.N.Y. 1993) ("Classification of similar claims

is permissible if the classification scheme of the claims or interests is reasonable").

The Amended Plan provides for the separate classification of Claims against and Equity

Interests in the Debtor based on differences in the legal nature and/or priority of the Claims and

Equity Interests. The Amended Plan designates 6 Classes of Claims and 1 Class of Equity

Interests. See Amended Plan at Art. II, Sec. 2.3. Each of the Claims or Equity Interests in each

particular Class is substantially similar to the other Claims or Equity Interests in such Class.

Therefore, the classification of Claims and Equity Interests does not prejudice the rights of

holders of such claims and interests, is consistent with the requirements of the Bankruptcy Code

and, thus, satisfies the requirements of Section 1122(a) of the Bankruptcy Code. See Fairfield

Executive Assocs., 161 B.R. at 600.

### B.    The Amended Plan Complies With Section 1123(a) of the Bankruptcy Code

Section 1123(a) of the Bankruptcy Code sets forth seven mandatory contents of a plan of

reorganization. See 11 U.S.C. § 1123(a). Specifically, Section 1123(a) requires that a plan: (a)

designate classes of claims and interests; (b) specify unimpaired classes of claims and interests;

(c) specify the treatment of impaired classes of claims and interests; (d) provide for equality of

treatment within each class; (e) provide adequate means for the plan's implementation; (f)

prohibit the issuance of nonvoting equity securities and provide an appropriate distribution of

4

voting power among the classes of securities; and (g) contain only provisions that are consistent

with the interests of creditors and equity security holders and with public policy with respect to

the manner of selection of the reorganized company's officers and directors.  <u>See</u> 11 U.S.C.

§ 1123(a).  As explained below, the Amended Plan includes each of the provisions mandated by

Section 1123(a) of the Bankruptcy Code.

### 1.    Section 1123(a)(1): Designation of Classes of Claims and Interests

As discussed briefly above, the Amended Plan designates 6 Classes of Claims and 1

Class of Equity Interests subject to Section 1122 of the Bankruptcy Code.  <u>See</u> Amended Plan at

Art. II, Sec. 2.3.  Accordingly, the Amended Plan satisfies Section 1123(a)(1) of the Bankruptcy

Code.

### 2.    Section 1123(a)(2): Classes that Are Unimpaired Under the Amended Plan

The Amended Plan identifies Class 1 (Other Priority Claims), Class 5 (Other Secured

Claims) and Class 7 (Equity Interests in Zayat Stables) as unimpaired.  <u>See</u> Amended Plan at Art.

II, Sec. 2.3.  Accordingly, the Amended Plan satisfies Section 1123(a)(2) of the Bankruptcy

Code.

### 3.    Section 1123(a)(3): Classes that Are Impaired Under the Amended Plan

The Amended Plan identifies Class 2 (Fifth Third Claim), Class 3 (Keeneland Claim),

Class 4 (Service Provider Claims) and Class 6 (General Unsecured Claims) as impaired.  <u>See</u>

Amended Plan at Art. II, Sec. 2.3.  Accordingly, the Amended Plan satisfies Section 1123(a)(3)

of the Bankruptcy Code.

48051/0001-6800850v4

### 4. Section 1123(a)(4): Equal Treatment Within Each Class

The Amended Plan provides for the same treatment for each Claim or Equity Interest within a particular class as required by Section 1123(a)(4) of the Bankruptcy Code.  See Amended Plan at Art. II, Sec. 2.3.  Accordingly, the Amended Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

### 5. Section 1123(a)(5): Adequate Means for Implementation

Article IV of the Amended Plan sets forth the means for implementation of the Amended Plan as required by Section 1123(a)(5).  See Amended Plan at Art. IV.  The Amended Plan specifically provides, among other things:  (a) for continuing corporate existence of the Debtor under and pursuant to the organizational documents that existed before the Filing Date; (b) for continuing the management structure of the Debtor that existed before the Filing Date; (c) the restructured and modified repayment terms for the Fifth Third obligations; (d) for a new capital contribution by Ahmed Zayat in the amount of $3.2 million in the form of forgiveness of the DIP Loan Claim and Sheriff Claim assigned to Ahmed Zayat by his brother, Sherif El Zayat; (e) for the vesting of all property of the estate in the Reorganized Debtor; (f) for the payment of professional fees; and (g) for the dissolution of the Committee.  Furthermore, Article V of the Amended Plan specifies distribution mechanisms and procedures under the Amended Plan.  See Amended Plan at Art. V.  Those means for implementation of the Amended Plan are adequate and, therefore, the Second Amended Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

### 6. Section 1123(a)(6): Prohibitions on the Issuance of Non-Voting Securities

Section 1123(a)(6) of the Bankruptcy Code states that a plan must "provide for the inclusion in the charter of the debtor, if the debtor is a corporation…of a provision prohibiting

48051/0001-6800850v4

the issuance of nonvoting equity securities, and providing, as to the several classes of securities

possessing voting power, an appropriate distribution of voting power…." 11 U.S.C.

§ 1123(a)(6).   The Amended Plan does not provide for the issuance of non-voting equity

securities.  Accordingly, Section 1123(a)(6) of the Bankruptcy Code is not applicable.

### 7.   Section 1123(a)(7): Provisions Regarding Directors and Officers

Section 1123(a)(7) requires that the Amended Plan "contain only provisions that are

consistent with the interests of creditors and equity security holders and with public policy with

respect to the manner of selection of any officer, director, or trustee under the plan and any

successor to such officer, director or trustee."  See 11 U.S.C. § 1123(a)(7).

Article IV, Section 4.2 of the Amended Plan provides that on or after the Effective Date,

the current members and officers of the Debtor will serve as officers and members of the

Reorganized Debtor.  See Amended Plan at Art. IV, Sec. 4.2.  Ahmed Zayat's institutional

knowledge of the Debtor's industry, business and assets is critical to maximizing the value of the

Debtor's estate in accordance with the Amended Plan and, therefore, his appointment is

consistent with the interests of creditors and equity security holders.  Accordingly, the Amended

Plan complies with Section 1123(a)(7) of the Bankruptcy Code.

### C.   The Amended Plan Complies With Section 1123(b) of the Bankruptcy Code

Section 1123(b) sets forth certain permissive provisions that may be incorporated into a

Chapter 11 plan.  The following provisions of the Amended Plan are consistent with Section

1123(b) of the Bankruptcy Code.

7

1.    **Section 1123(b)(1):  Impairment/Unimpairment
of Claims and Interests**

Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of

claims, secured or unsecured, or of interests."  11 U.S.C. § 1123(b)(1).  As set forth above, the

Amended Plan impairs, or leaves unimpaired, as the case may be, each Class of Claims and

Equity Interests as contemplated by Section 1123(b)(1) of the Bankruptcy Code.  Accordingly,

the Amended Plan is consistent with Section 1123(b)(1) of the Bankruptcy Code.

2.    **Section 1123(b)(2):  Assumption/Rejection of
Executory Contracts and Leases**

Section 1123(b)(2) permits a plan to provide for the assumption, assumption and

assignment or rejection of executory contracts and unexpired leases pursuant to Section 365 of

the Bankruptcy Code.  Article VII, Section 7.1 of the Amended Plan provides that the Lease

Agreement and Vinery Agreements shall be deemed assumed by the Debtor and assigned to the

Reorganized Debtor as of the Effective Date.  See Amended Plan at Art. VII, Sec. 7.1.  The

Amended Plan further states that the Reorganized Debtor shall cure any and all undisputed

defaults under the Lease Agreement and Vinery Agreements in the ordinary course of business,

but in no event shall any undisputed defaults exist post-ninety days after the Effective Date.  See

Amended Plan at Art. VII, Sec. 7.2.  In addition, notice of the cure amount for the Lease

Agreement and Vinery Agreements is set forth on Schedule 1 to the Amended Plan.  See

Amended Plan at Sch. 1.

As a general rule, courts apply a business judgment test and allow a debtor to make a

reasonable business determination as to whether or not an executory contract or lease is to be

assumed or rejected.  See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36,

39-40 (3d Cir. 1989); Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re

Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987); see also In re

8

Nickels Midway Pier, LLC, 341 B.R. 486, 493 (D.N.J. 2006).  That standard is satisfied when a

debtor determines that assumption or rejection will benefit the estate.  See Sharon Steel, 872 F.2d

at 39-40; Wheeling-Pittsburgh, 72 B.R. at 846.  A debtor may assume or assume and assign an

executory contract or unexpired lease if the debtor (a) cures outstanding defaults under the

contract or lease under Section 365(b) of the Bankruptcy Code, (b) compensates, or provides

adequate assurances that it will promptly compensate, the counterparty to the executory contract

or unexpired lease for any actual pecuniary loss to such counterparty resulting from the debtor's

default, and (c) provides adequate assurance to such counterparty that it can perform under the

contract or unexpired lease in the future.  See 11 U.S.C. § 365(b)(1).

Here, the Debtor has exercised its sound business judgment in connection with the

assumption and assignment of the Lease Agreement and Vinery Agreements under the Second

Amended Plan.  The Lease Agreement represents an important asset of the Debtor's estate

because the premises governed by that lease are the Debtor's headquarters and executive offices.

Absent the Debtor's ability to maintain this leasehold interest, the Debtor could not continue to

run its business operations and generate revenue without material disruption.  In addition, the

Vinery Agreements represent important assets of the Debtor's estate because they govern the

management of some of the Debtor's prized stallions, such as Pioneerof the Nile.  With respect

to the Lease Agreement and Vinery Agreements, the outstanding cure amount is set forth on

Schedule 1 of the Amended Plan.

Accordingly, the Debtor satisfies Section 365 of the Bankruptcy Code and the Amended

Plan is consistent with Section 1123(b)(2) of the Bankruptcy Code.

48051/0001-6800850v4

3.    **Section 1123(b)(3): Settlement of Claims and
Causes of Action**

Section 1123(b)(3)(B) provides that a plan may "provide for the retention and

enforcement by the debtor" of certain claims or interests.  Article IV, Section 4.9 of the

Amended Plan states that, in accordance with Section 1123(b) of the Bankruptcy Code, the

Reorganized Debtor will retain all of the Causes of Action; provided, however, that the

Reorganized Debtor shall assign all Avoidance Actions against any holder of a General

Unsecured Claim to the Creditors' Committee on the Effective Date.  The Creditors' Committee

shall not pursue any Avoidance Actions against any holder of a General Unsecured Claim unless

there is a default under the Plan.  See Amended Plan at Art. IV, Sec. 4.9.

Accordingly, the Amended Plan is consistent with Section 1123(b)(3)(B) of the

Bankruptcy Code.

4.    **Section 1123(b)(5): Modification of Creditor
Rights**

Section 1123(b)(5) provides that a plan may "modify the rights of holders of secured

claims, other than a claim secured only by a security interest in real property that is the debtor's

principal residence, or of holder of unsecured claims, or leave unaffected the rights of holders of

any class of claims."  11 U.S.C. § 1123(b)(5)  The Amended Plan modifies the rights of holders

of claims in Class 2 (Fifth Third Claim), Class 3 (Keeneland Claim), Class 4 (Service Provider

Claims) and Class 6 (General Unsecured Claims).  See Amended Plan at Art. II, Sec. 2.3.  The

Amended Plan leaves unaffected the rights of holders of claims in Class 1 (Other Priority

Claims), Class 5 (Other Secured Claims) and Class 7 (Equity Interests in Zayat Stables).  See

Amended Plan at Art. II, Sec. 2.3.

Accordingly, the Amended Plan is consistent with Section 1123(b)(5) of the Bankruptcy

Code.

48051/0001-6800850v4

### 5.    Section 1123(b)(6): Releases, Temporary Injunction and Exculpatory Provisions

Section 1123(b)(6) is a "catchall" provision, which permits inclusion in a plan of any appropriate provision as long as such provision is consistent with the applicable sections of the Bankruptcy Code.  The Amended Plan contains certain release, temporary injunction and exculpation provisions that are consistent with the applicable provisions of the Bankruptcy Code and conform to the requirements of case law in the Third Circuit.

(a)    <u>Releases</u>

The releases given by the Debtor and Holders of Claims and Equity Interests are critical to the Debtor's successful reorganization and are consistent with the Third Circuit's recognition of the jurisdictional authority of a Bankruptcy Court to consider and confirm, in appropriate circumstances, Chapter 11 plans that contain non-debtor releases and injunctions.  In fact, such releases have been described by the United States District Court for the District of New Jersey as "customary and ordinary in large Chapter 11 cases," particularly those dealing with complex litigation and mass torts.  <u>In re Am. Family Enter.</u>, 256 B.R. 377, 406 (D.N.J. 2000) (citations omitted).

The explicit language of Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of another entity on, or the property of any other entity, for such debt."  11 U.S.C. § 524(e).  A plain and natural reading of this provision, however, does not preclude a non-debtor release from a creditor's claims:

> § 524(e) does not purport to limit the bankruptcy court's powers to release a non-debtor from a creditor's claims.  If Congress meant to include such a limit, it would have used the mandatory terms "shall" or "will" rather than the definitional term "does."  And it would have omitted the prepositional phrase "on, or…for, such debt," ensuring that the "discharge of a debt of the debtor *shall* not affect the liability of another entity"—whether related to a debt or not.

11

In re Airadigm Commc'n, Inc., 519 F.3d 640, 656 (7th Cir. 2008).

Moreover, a bankruptcy court "applies the principles and rules of equity jurisprudence."

Pepper v. Litton, 308 U.S. 295, 304 (1939).  Section 105(a) codifies this understanding of the

Bankruptcy Court's powers by giving it the authority to effect any "necessary or appropriate"

order to carry out the provisions of the Bankruptcy Code.  United States v. Energy Resources

Co., Inc., 495 U.S. 545, 549 (1990).  A Bankruptcy Court may exercise those broad equitable

powers within plans of reorganization, as Section 1123(b)(6) permits a court to "include any

other appropriate provision not inconsistent with the applicable provisions of this title."  11

U.S.C. § 1123(b)(6).  Accordingly, this "residual authority" under Section 105 has been widely

construed to enable the Bankruptcy Court to enter, under appropriate circumstances, non-debtor

releases and injunctions.  Airadigm Comm'n., 519 F.3d at 657.

The leading case discussing the validity of non-consensual non-debtor releases in the

Third Circuit is Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203 (3d

Cir. 2000).  In that case of first impression, the court considered the validity of non-debtor

releases and injunctions within a plan of reorganization.  The Third Circuit concluded that

Section 524(e) of the Bankruptcy Code does not automatically bar the issuance of non-debtor

releases, but had difficulty articulating an appropriate standard.  Continental, 203 F.3d at 211.

The Third Circuit declined to establish a "blanket rule prohibiting all non-consensual releases

and permanent injunction of non-debtor obligations."  Id. at 213-14.  The court also declined to

"establish [its] own rule regarding the conditions under which non-debtor releases and permanent

injunctions are appropriate or permissible" at the acknowledged cost of providing "prospective

guidance."  Id. at 214.

In <u>Continental</u>, the Third Circuit embarked on a survey of the rulings emanating from

other circuits, noting that some Courts of Appeals, such as the Ninth and Tenth, have held that

non-debtor releases and injunctions are always impermissible while others, such as the Second

and Fourth, permit a more flexible approach, albeit in the context of "extraordinary cases" where

releases and injunctions have been sustained when the non-debtor beneficiaries provide

substantial consideration necessary for the reorganization.  <u>Id.</u> at 212.  The Third Circuit

determined the "hallmarks of permissible non-consensual releases [to be] fairness, necessity to

the reorganization, and specific factual findings to support these conclusions."  <u>Id.</u> at 214.  The

bankruptcy court below, however, never "specifically addressed" the release and permanent

injunction of the claims of the class action plaintiffs and, consequently, the confirmation order

"was not accompanied by any findings that the release was fair to the Plaintiffs and necessary to

the Continental Debtors' reorganization [and] [w]ithout such findings, a release and permanent

injunction cannot stand on their merits under any of the standards set forth in the case law of

other circuits."  <u>Id.</u>

The critical need for the bankruptcy court to make sufficiently particularized factual

findings for the equitable analysis of non-debtor releases has been emphasized by other courts.

<u>See</u> <u>e.g.</u>, <u>In re Dow Corning Corp.</u>, 280 F.3d 648 (6th Cir. 2002).  Thus, non-consensual, non-

debtor releases that are fair, necessary for reorganization and are accompanied by specific factual

findings to support these conclusions are permitted in the Third Circuit.

The lessons of <u>Continental</u> regarding non-debtor releases and injunctions are clear: to be

permissible, they must be fair, necessary to the reorganization and the bankruptcy court must

make specific factual findings to support such conclusions.  Because the Third Circuit in

<u>Continental</u> declined to establish a precise rule regarding the specific conditions necessary for

13

the issuance of non-debtor releases and injunctions, some courts within the Third Circuit

continue to apply a five-factor test cited in In re Zenith Electronics, Inc., 241 B.R. 92, 110

(Bankr. D.Del. 1999) and derived from the case of In re Master Mortgage Inv. Fund, Inc., 168

B.R. 930, 937 (Bankr. W.D. Mo. 1994), to determine whether any "unusual or extraordinary

circumstances exist" that would support the inclusion of non-debtor release and injunction in a

plan.  Those factors are:

> (1) an identity of interest between the debtor and the third party,
> such that a suit against the non-debtor is, in essence, a suit against
> the debtor or will deplete assets of the estate;
>
> (2) substantial contribution by the non-debtor of assets to the
> reorganization;
>
> (3) the essential nature of the injunction to the reorganization to the
> extent that, without the injunction, there is little likelihood of
> success;
>
> (4) an agreement by a substantial majority of creditors to support
> the injunction, specifically if the impacted class or classes
> "overwhelmingly" votes to accept the plan; and
>
> (5) provision in the plan for payment of all or substantially all of
> the class or classes affected by the injunction.

Zenith Electronics, 241 B.R. at 110 (citing Master Mortgage, 168 B.R. at 937); see generally In

re Genesis Health Ventures, Inc., 266 B.R. 591, 606-07 (Bankr. D.Del. 2001); Am. Family, 256

B.R. at 407.  The evidentiary inquiry into these factors is properly performed by the bankruptcy

court at the confirmation hearing.

The "unusual circumstances" that support the approval of non-debtor releases may be

found with a debtor (i) faced with numerous claims, (ii) proposing a negotiated plan to satisfy

those claims through third party contributions, and (iii) where the non-debtor releases are

considered *quid pro quo* for the contributions.  See In re Adley, 333 B.R. 587, 610 (Bankr. D.

Mass. 2005); <u>Master Mortgage</u>, 168 B.R. 930.  In such cases, non-debtor releases are integral and absolutely necessary to the satisfaction of plaintiffs' claims.

Not all of those factors need be present for non-debtor releases to be approved, and courts will undertake a factual review and balancing of the equities.  <u>Genesis Health</u>, 266 B.R. at 606 (citing <u>Master Mortgage</u>, 168 B.R. at 937).  <u>See</u> generally <u>In re Congoleum Corp.</u>, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) (requiring a balancing of the <u>Zenith</u> factors).  No court has set out a rigid "factor test" to be applied in every circumstance.  Rather, courts have engaged in a fact specific review, weighing the equities of each case.  Courts have not considered the articulated factors to be an exclusive list of considerations, nor are they a list of conjunctive requirements. <u>Master Mortgage,</u> 168 B.R. at 935.  <u>See</u> also  <u>Airadigm Commc'n.,</u> 519 F.3d at 657 (whether a release is "appropriate" for the reorganization is fact intensive and depends on the nature of the reorganization and whether the release was necessary and appropriately tailored).  A contribution need not be made by each and every non-debtor beneficiary of a release or channeling injunction under a plan; rather, contributions may be made on their behalf.  <u>Am. Family</u>, 256 B.R. 377 (citations omitted).

Even if the five factors are not satisfied, the bankruptcy court has discretion to permit releases.  In <u>In re PWS Holding Corp.</u>, 228 F.3d 224 (3d Cir. 2000), the reorganization plan provided for a release of the creditors' committee, the committee members, and their respective officers, directors, employees, advisors, professionals, or agents from any act of omission relating to the bankruptcy cases and the plan, "except for willful misconduct or gross negligence."  <u>Id.</u> at 246.  The Third Circuit approved the release provision without application of <u>Master Mortgage</u> or <u>Zenith</u>.  <u>Id.</u> at 247.

Applying the Zenith factors, the Amended Plan's release provisions should be approved in this case.  First, the released parties share an identity of interest with the Debtor.  One of the most frequent grounds on which courts have found an identity of interest between the debtor and a non-debtor third-party is where the debtor has a duty to indemnify the third-party.  See, e.g., A.H. Robins Co., Inc., 788 F.2d 994, 999-1001 (4th Cir. 1986) (the court stayed personal injury actions against non-debtor third parties because *inter alia*, those parties were entitled to indemnification from the debtor); In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009) (extending the automatic stay to non-debtors for, among other reasons, "because the Debtors owe potential contractual and common-law duties to indemnify the non-debtors, [and] the interests of the debtors and non-debtors in the state court action are identical."); In re Cont'l Airlines, Inc., 177 B.R. 475, 479 (D. Del. 1993) (the court enjoined shareholder actions brought against non-debtors because the debtor's assets could be depleted if the shareholders were successful against the non-debtors); In re Am. Family Enter., 256 B.R. at 391-92 (debtor's indemnification obligations to employees created an identity of interest and thus a suit against the employees in essence was a suit against one or more of the debtors); In re Lomas Fin. Corp., 117 B.R. 64, 68 (S.D.N.Y. 1990) (relying on existence of indemnity agreements, *inter alia*, when enjoining action against debtor's corporate officers because indemnification obligations of debtor would arise if corporate officers were found liable); In re Family Health Servs., Inc., 105 B.R. 937, 943 (Bankr. C.D. Cal. 1989) (enjoining action and finding that creditors' claims against non-debtors gave rise to debtors' indemnification liability).  An identity of interest exists between the debtor and a non-debtor third-party where the debtor owes potential contractual duties to indemnify the non-debtor.  Philadelphia Newspapers, 407 B.R. at 616.

16

In Philadelphia Newspapers, the debtor argued that the indemnification provision in its operating agreement provided a contractual duty to indemnify its members, managers and officers. Id. at 612, 613, 616. The court held that because the debtor owes potential contractual duties to indemnify the non-debtors, the interests of the debtors and non-debtors in the state court action were identical and, as a result, warranted an extension of the Section 362 automatic stay to the non-debtor. Id. at 616.

Here, the Debtor is governed by that certain limited liability company operating agreement dated April 1, 2005 (the "Operating Agreement"). Pursuant to Section 5.7 of the Operating Agreement:

> Any person made or threatened to be made a party to an action or proceeding, by reason of the fact that he . . . is, or was a manager, member, employee or agent of the [Debtor], or then serves or has served on behalf of the [Debtor] in any capacity at the request of the [Debtor], shall be indemnified by the [Debtor] against reasonable expenses, judgments, fines and amounts actually and necessarily incurred in connection with the defense of such action or proceeding . . . .

(Operating Agreement, § 5.7).

The Operating Agreement indemnifies current and former managers, members, employees and agents that are sued in their capacity as same. Accordingly, the Debtor has the contractual obligation to indemnify its current and former managers, members, employees and agents if they are obligated to make any payments in connection with any claims asserted against them in connection with their current or former employment by the Debtor. Accordingly, those parties share an identity of interest with the Debtor. Therefore, the claims to be released are of such a nature that they are indemnifiable by the Debtor and, therefore, would implicate the Debtor and deplete estate assets. See Zenith Electronics, 241 B.R. at 110.

17

Second, Ahmed Zayat is contributing substantial assets to the reorganization.  Article II, Sections 2.2.D and 2.3.I of the Amended Plan state that Sherif El Zayat is assigning the Allowed DIP Loan Claim and Sherif Claim to Ahmed Zayat, who is then forgiving those claims.  See Amended Plan at Art. II, Secs. 2.2.D and 2.3.I.  That forgiveness provides substantial value to the reorganization.  In addition, all the released parties have been involved in the negotiations and formulation of the Amended Plan.  Specifically, Ahmed Zayat, the Committee and its members, and each of their respective attorneys, financial advisors and agents have designed, negotiated and implemented the restructuring contemplated by the Amended Plan.  Accordingly, the releases are an integral component of the Amended Plan.[2]

Most importantly, the creditors have consented to the release provisions by voting in favor (and not objecting to confirmation) of the Amended Plan.  Courts in the Third Circuit have concluded that consensual releases contained in a plan of reorganization are permissible.  See, e.g., Continental, 203 F.3d at 214 n.11 (noting that several bankruptcy courts in the Third Circuit permit non-debtor releases if such releases are consensual); Zenith Electronics, 241 B.R. at 111 (permitting the release of claims against non-debtors held by creditors voting in favor of the plan); In re Spansion, Inc., Case No. 09-10960 (KJC), 2010 WL 1292837, *22 (Bankr. D. Del. Apr. 1, 2010) (noting that consensual third-party releases may be included in a plan of reorganization).  Accordingly, the third-party release provisions of the Amended Plan are fair, appropriate and in the best interests of the Debtor's estate and should be approved.

Temporary Injunction

---

[2] The Debtor has not conducted an investigation as to any potential claims and causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code) by and among the releasing parties.  Any action brought to enforce a potential claim, however, would involve significant uncertainty and costs to the Debtor, including legal expenses and the distraction of the Debtor's key personnel from the demands of the Reorganized Debtor's business.

18

Article IX, Section 9.4 of the Amended Plan temporarily enjoins Fifth Third from proceeding against Ahmed Zayat for collection of any amounts paid or to be paid by Ahmed Zayat under the Zayat Guaranty or by the Debtor or Reorganized Debtor under the Amended Plan or Pioneer for collection of any amounts paid or to be paid by Pioneer under the Pioneer Guaranty or by the Debtor or Reorganized Debtor under the Amended Plan provided the Debtor is making distributions in accordance with the terms of the Amended Plan. See Amended Plan at Art. IX, Sec. 9.4.  Article IX, Section 9.4 further states that the injunction granted under the Amended Plan shall not affect the claims and rights of Fifth Third to proceed against Zayat for collection on the Zayat Guaranty or Pioneer for collection on the Pioneer Guaranty. See id. Fifth Third, however, may only proceed against the guarantors if there is a default under the Amended Plan. See id.

A temporary injunction under the facts and circumstances of this case is permissible under relevant case law. See, e.g., Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 760 (5th Cir.1995) (noting that temporary injunctions of third party actions may be permissible under certain circumstances); In re Seatco, 257 B.R. 469, 475 (Bankr. N.D. Tex. 2001) (granting a temporary injunction where the plan of reorganization did not affect the principal/guarantor's liability to the creditor, but rather, merely prohibits enforcement of the guarantee for the term of the plan); In re Bernhard Steiner Pianos USA, Inc., 292 B.R. 109, 116 (Bankr. N.D. Tex. 2002) (granting a temporary injunction and focusing on the continued involvement of the debtor's president as crucial to the debtors' reorganization efforts).  In addition, Fifth Third expressly consented to the temporary injunction by voting in favor of the Amended Plan.  Accordingly, the temporary injunction under Article IX, Section 9.4 of the Amended Plan should be approved.

Exculpation

19

Article IX, Section 9.5 of the Amended Plan contains an exculpation provision that should be approved under Third Circuit law.  See Amended Plan at Art. IX, Sec. 9.5.  Section 9.5 limits liability arising out of any act or omission in connection with, relating to, or arising out of the Chapter 11 case, the formulation, negotiating, or implementation of the Amended Plan, the solicitation of acceptances of the Amended Plan, the pursuit of confirmation of the Amended Plan, the confirmation of the Amended Plan, the consummation of the Amended Plan, or the administration of the Amended Plan or the property to be distributed under the Amended Plan. See Amended Plan at Art. IX, Sec. 9.5.  The exculpation, however, contains an express carve-out for acts or omissions that are the result of fraud, gross negligence or willful misconduct.  This type of provision is standard and has been approved by the Third Circuit.  See In re PWS Holding Corp., 228 F.3d 224, 247 (3d. Cir. 2000).

### D.    Section 1123(c) of the Bankruptcy Code

Section 1123(c) is relevant only in a case concerning an individual and, therefore, does not apply in this Chapter 11 case.

### E.    Section 1123(d): Cure of Defaults

Section 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  11 U.S.C. § 1123(d).  Article VII, Section 7.2 of the Amended Plan provides that, except as may otherwise be agreed to by the parties, within ninety days after the Effective Date, or as due in the ordinary course of business, the Reorganized Debtor shall cure any and all undisputed defaults under the Executory Contracts in accordance with section 365(b)(1) of the Bankruptcy Code.  See Amended Plan at Art. VII, Sec. 7.2.  A schedule identifying the Executory Contracts to be assumed pursuant to the Amended Plan,

together with applicable cure amounts, is attached as Schedule 1 to the Amended Plan.  Thus, the

Amended Plan complies with Section 1123(d) of the Bankruptcy Code.

Based on the foregoing, the Amended Plan fully complies with each of the requirements

of Sections 1122 and 1123, as well as all other applicable provisions of the Bankruptcy Code

and, thus, satisfies the requirements of Section 1129(a)(1) of the Bankruptcy Code.

## II.   SECTION 1129(a)(2):  THE DEBTOR, AS THE PLAN PROPONENT, HAS COMPLIED WITH THE BANKRUPTCY CODE

Section 1129(a)(2) of the Bankruptcy Code requires the plan proponent to "compl[y] with

the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).  The legislative

history of this provision indicates that its principal purpose is to ensure the proponent complies

with the disclosure and solicitation requirements set forth in Section 1125 of the Bankruptcy

Code.  See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph

2(c) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions

of chapter 11, such as section 1125 regarding disclosure"); see also Johns-Manville Corp., 68

B.R. at 630; Toy & Sports Warehouse, 37 B.R. at 149.

As set forth below, the Debtor has complied with the applicable provisions of the

Bankruptcy Code, including the provisions of Sections 1125 and 1126, regarding disclosure and

plan solicitation.

### A.   Compliance with Section 1125: Postpetition Disclosure and Solicitation

Section 1125(b) of the Bankruptcy Code provides, in pertinent part:

> An acceptance or rejection of a plan may not be solicited after the
> commencement of the case under [the Bankruptcy Code] from a
> holder of a claim or interest with respect to such claim or interest,
> unless, at the time of or before such solicitation, there is
> transmitted to such holder the plan or a summary of the plan, and a

> written disclosure statement approved, after notice and a hearing,
> by the court as containing adequate information….

11 U.S.C. § 1125.

On June 9, 2010, the Court entered an Order: (A) Approving the Disclosure Statement

Pursuant to 11 U.S.C. § 1125(b); (B) Fixing a Record Date for Voting and Procedures for Filing

Objections to the Plan and Temporary Allowance or Disallowance of Claims for Voting

Purposes; (C) Scheduling a Hearing and Approving Notice and Objection Procedures in Respect

of Plan Confirmation; (D) Approving Solicitation Packages and Procedures for Distribution

Thereof; and (E) Approving the Form of Ballot and Establishment of Procedures for Voting on

the Plan (the "Disclosure Statement and Voting Procedures Order") [Docket No. 131].  Pursuant

to the Disclosure Statement and Voting Procedures Order, the Bankruptcy Court approved the

Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to

enable hypothetical, reasonable investors typical of the Debtor's creditors and equity interest

holders to make an informed judgment whether to accept or reject the Amended Plan.

Solicitation requirements also were met.  The Disclosure Statement and Voting

Procedures Order approved, among other things: (a) all materials to be transmitted to creditors

entitled to vote on the Plan (the "Solicitation Packages"), (b) the form of ballots, (c) the

procedures for voting and tabulation of votes to accept or reject the Plan, and (d) the manner of

service of the Solicitation Packages containing the approved Disclosure Statement and the

approved ballots.

On June 11, 2010, the Debtor commenced its solicitation of votes on the Amended Plan

by mailing solicitation packages and ballots to all creditors entitled to vote on the Amended Plan.

On June 30, 2010, the Debtor filed a certification of service with respect to service of the

Solicitation Packages in accordance with the Disclosure Statement and Voting Procedures Order.

On July 13, 2010, the Debtor filed the Certification of Ryan T. Jareck, Esq. Certifying Voting on,

and Tabulation of, Ballots Accepting and Rejecting the Amended Plan [Docket No. 162] (the

"Jareck Certification") confirming that the Debtor solicited and tabulated votes in accordance

with the Disclosure Statement and Voting Procedures Order.  The Debtor submits that its

solicitation of votes on the Amended Plan was in good faith, entitling it to the benefits of Section

1125(e) of the Bankruptcy Code.

> **B.      Compliance with Section 1126:  Acceptance of the
> Amended Plan**

Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan

of reorganization.  Pursuant to Section 1126(a), only holders of allowed claims in impaired

classes of claims or equity interests that will receive or retain property under a plan on account of

such claims or equity interests may vote to accept or reject such plan.  11 U.S.C. § 1126(a).  The

deadline for voting to accept or reject the Amended Plan was July 12, 2010.

As set forth in the Jareck Certification, Class 1 (Other Priority Claims), Class 5 (Other

Secured Claims) and Class 7 (Equity Interests in Zayat Stables) are Classes of unimpaired

Claims and Equity Interests, as applicable, and, therefore, conclusively are presumed to have

accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Claims in Class 2 (Fifth

Third Claim), Class 3 (Keeneland Claim), Class 4 (Service Provider Claims) and Class 6

(General Unsecured Claims) are impaired and have voted to accept the Amended Plan in

accordance with Sections 1126 of the Bankruptcy Code.  See 11 U.S.C. §§ 1126(f) and 1126(g).

Accordingly, the requirements of Section 1129(a)(2) of the Bankruptcy Code have been met.

48051/0001-6800850v4

### III.    SECTION 1129(a)(3):  THE AMENDED PLAN HAS BEEN PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Third Circuit has found that good faith requires "some relation" between the chapter 11 plan and the "reorganization-related purposes" of Chapter 11.  See In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999); see also Johns-Manville Corp., 843 F.2d at 649 (citing Koelbl v. Glessing (In re Koelbl), 751 F.2d 137, 139 (2d Cir. 1984) (interpreting the standard as requiring a showing that "the plan was proposed with honesty and good intentions")).  Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied."  In re Sun Country Dev., Inc., 764 F.2d 406, 408 (5th Cir. 1985).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the formulation of a chapter 11 plan.  Id.

The Debtor proposed the Amended Plan in good faith and not by any means forbidden by law.  The process leading to promulgation of the Amended Plan provides independent evidence of the Debtor's good faith.  In particular, the Amended Plan arose out of extensive, rigorous and arms'-length negotiations among the Debtor, Fifth Third and other major creditor constituencies, and is supported by the Committee.  Moreover, consistent with the overriding purpose of Chapter 11 of the Bankruptcy Code, the Amended Plan enables holders of Claims and the Debtor to realize the highest possible recoveries under the circumstances of this case.  See N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").  The Debtor is not aware of any viable alternative that would allow the

24

Debtor to emerge from Chapter 11 with recoveries equal to or greater than those projected for creditors under the Amended Plan.

Furthermore, as set forth in the Liquidation Analysis (defined herein) and as described in more detail below, a forced sale of the Debtor's assets in a Chapter 7 case would provide inferior recoveries to holders of general unsecured claims compared to distributions under the Amended Plan. Accordingly, the requirements of Section 1129(a)(3) of the Bankruptcy Code have been satisfied here.

**IV.    SECTION 1129(a)(4):  THE AMENDED PLAN PROVIDES THAT FEES AND EXPENSES ARE SUBJECT TO COURT APPROVAL**

Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Bankruptcy Court.  See 11 U.S.C. § 1129(a)(4).  Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the court.  See In re Resorts Int'l, 145 B.R. 412, 475 (Bankr. D.N.J. 1990).

Pursuant to the interim compensation procedures established in this Chapter 11 case, the Bankruptcy Court has authorized and approved the payment of certain fees and expenses of retained professionals, subject to final review for reasonableness by the Bankruptcy Court under Section 330 of the Bankruptcy Code.  The Amended Plan provides that the Bankruptcy Court shall retain jurisdiction to hear and determine all Fee Applications.  See Amended Plan at Art. II, Sec. 2.2.B.  All fees and expenses accrued through the Effective Date thus remain subject to the Bankruptcy Court's final review.  The foregoing procedures for the Bankruptcy Court's review and ultimate determination of fees and expenses to be paid by the Debtor satisfy the requirements of Section 1129(a)(4) of the Bankruptcy Code.  See In re Elsinore Shore Assocs.,

91 B.R. 238, 268 (Bankr. D.N.J. 1988) (requirements of section 1129(a)(4) satisfied where plan

provided for payment of only "allowed" administrative expenses).

V.      **SECTION 1129(a)(5):  THE DEBTOR HAS DISCLOSED
        ALL NECESSARY INFORMATION REGARDING
        OFFICERS, DIRECTORS AND INSIDERS**

Section 1129(a)(5) of the Bankruptcy Code requires that (i) the plan proponent disclose

the identity and affiliations of the proposed officers and directors of the reorganized debtor;

(ii) the appointment or continuance of such officers and directors be consistent with the interests

of creditors and equity security holders and with public policy; and (iii)  there be disclosure of

the identity and compensation of any insiders to be retained or employed by the reorganized

debtor.  Article IV, Section 4.2 of the Amended Plan identifies Ahmed Zayat as the sole post-

Effective Date officer of the Reorganized Debtor.  See Amended Plan at Art. IV, Sec. 4.2.

Furthermore, Article IV, Section 4.1 states that the Reorganized Debtor shall exist in accordance

with the applicable laws in Delaware and pursuant to its organizational documents in effect prior

to the Effective Date, except to the extent such organizational documents are amended, restated

or replaced under the Amended Plan.  See Amended Plan at Art. IV, Sec. 4.1.  Accordingly, the

Amended Plan satisfies Section 1129(a)(5) of the Bankruptcy Code.

VI.     **SECTION 1129(a)(6) IS NOT APPLICABLE**

Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory

commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has

approved any rate change provided for in the plan, or such rate change is expressly conditioned

on such approval."  11 U.S.C. § 1129(a)(b).  This provision is not applicable here as the Debtor

is not subject to any form of governmental rate regulation.

48051/0001-6800850v4

## VII. THE AMENDED PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(7) OF THE BANKRUPTCY CODE

Section 1129(a)(7) of the Bankruptcy Code provides, in relevant part:

With respect to each impaired class of claims or interests –

(A) each holder of a claim or interest of such class –

(i)     has accepted the plan; or

(ii)     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1129(a)(7).

Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best interests test" or the "liquidation test." See 11 U.S.C. § 1129(a)(7). The best interests test focuses on individual dissenting creditors rather than classes of claims. See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 442 (1999). Under the best interests test, the court "must find that each [non-accepting] creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated [under chapter 7 of the Bankruptcy Code]." Id. at 440; United States v. Reorganized CF&I Fabricators, Inc., 518 U.S. 213, 228 (1996).

Preliminarily, the "best interests test" is satisfied for those holders of Claims and Equity Interests in Class 1 (Other Priority Claims), Class 5 (Other Secured Claims) and Class 7 (Equity Interests in Zayat Stables) because those holders are unimpaired, see Amended Plan at Art. II, and, therefore, are deemed to have accepted the Amended Plan under Section 1126(f) of the Bankruptcy Code. Accordingly, the Amended Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

27

As to holders of Claims in impaired Classes 2 (Fifth Third Claim), 3 (Keeneland Claim),

4 (Service Provider Claims) and 6 (General Unsecured Claims), <u>see</u> Amended Plan at Art. II, the

"best interests test" is satisfied because each such holder will receive property under the

Amended Plan having a value that is at least as much as the value such holder would receive

from the liquidation of the Debtor's estate in a hypothetical Chapter 7 case.

J.H. Cohn, the Debtor's court-appointed financial advisors, together with the Debtor's

management, prepared a Chapter 7 liquidation analysis (the "Liquidation Analysis").  The

Liquidation Analysis, attached as Appendix D to the Amended Disclosure Statement, details the

recoveries to creditors as a result of a hypothetical Chapter 7 liquidation of the Debtor and its

assets.  The Liquidation Analysis, which is based on certain assumptions enumerated therein,

demonstrates that the holders of Claims in:

(a)    Class 2 (Fifth Third Claim) would receive 69% of its Claim from the liquidation
of the Debtor's assets.  The "best interests test" is satisfied as to Class 2 because
the recovery for such holders under the Amended Plan is 100%.

(b)    Class 3 (Keeneland Claim) would receive 0% of its Claim from the liquidation of
the Debtor's assets.  The "best interests test" is satisfied as to Class 3 because the
recovery for such holders under the Amended Plan is 100%.

(c)    Class 4 (Service Provider Claims) would receive 0% of its Claim from the
liquidation of the Debtor's assets.  The "best interests test" is satisfied as to Class
4 because the recovery for such holders under the Amended Plan is 100%.

(d)    Class 6 (General Unsecured Claims) would receive 0% of its Claim from the
liquidation of the Debtor's assets.  The "best interests test" is satisfied as to Class
6 because the recovery for such holders under the Amended Plan is 100%.

Based on the foregoing, creditors and interest holders will receive a greater recovery

under the Amended Plan than such creditors and interest holders would receive in liquidation

under Chapter 7 of the Bankruptcy Code.  Therefore, the "best interests test" is satisfied as to all

holders of allowed Claims or Interests.  Therefore, Section 1129(a)(7) of the Bankruptcy Code is

satisfied.

**VIII.    SECTION 1129(a)(8):  THE AMENDED PLAN HAS BEEN
ACCEPTED BY ALL IMPAIRED CLASSES AND, AS TO
SUCH CLASSES, THE REQUIREMENTS OF SECTION
1129(a)(8) HAVE BEEN SATISFIED**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests

either accepts the plan or not be impaired by the plan.  See, 11 U.S.C. § 1129(a)(8).  A class of

claims accepts a plan if the holders of at least two-thirds in dollar amount and more than one-half

in number of claims of that class vote to accept the plan, counting only those claims whose

holders actually vote.  11 U.S.C. § 1126(c).  A class of interests accepts a plan if holders of at

least two-thirds of the amount of interests vote to accept the plan, counting only those interest

whose holders actually vote.  11 U.S.C. § 1126(d).

Claims in Class 2 (Fifth Third Claim), Class 3 (Keeneland Claim), Class 4 (Service

Provider Claims) and Class 6 (General Unsecured Claims) are impaired and have voted to accept

the Amended Plan in accordance with Sections 1126 of the Bankruptcy Code.  See 11 U.S.C.

§§ 1126(f) and 1126(g).  Accordingly, the requirements of Section 1129(a)(8) of the Bankruptcy

Code have been met in that each Class of impaired Claims has accepted the Amended Plan.

**IX.    SECTION 1129(a)(9):  THE AMENDED PLAN PROVIDES
FOR PAYMENT IN FULL OF ALL ALLOWED
ADMINISTRATIVE AND PRIORITY CLAIMS**

Section 1129(a)(9)(A) of the Bankruptcy Code requires holders of claims of a kind

specified in Section 507(a)(1) of the Bankruptcy Code – i.e., administrative claims allowed under

Section 503(b) of the Bankruptcy Code – to receive cash equal to the allowed amount of such

claims on the effective date of the plan, unless such holders agree to different treatment.  Section

1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in

Sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code – generally, wage, employee

benefit and deposit claims entitled to priority – must receive (a) if the class has accepted the plan,

deferred cash payments of a value equal to the allowed amount of such claim; or (b) if the class

has not accepted the plan, cash equal to the allowed amount of such claim on the effective date

of the plan.  Finally, Section 1129(a)(9)(C) of the Bankruptcy Code provides that holders of

claims of a kind specified in Section 507(a)(8) of the Bankruptcy Code – i.e., priority tax claims

– must receive deferred cash payments over a period not to exceed five years after the

Commencement Date, the present value of which equals the allowed amount of the claim.

As set forth in Article II, Section 2.2 of the Amended Plan, all administrative and priority

claims will be paid in accordance with Section 1129(a)(9) of the Bankruptcy Code.  <u>See</u>

Amended Plan at Art. II, Sec. 2.2.

## X.    SECTION 1129(a)(10):  AT LEAST ONE CLASS OF IMPAIRED CLAIMS HAS ACCEPTED THE AMENDED PLAN

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the

Amended Plan by at least one class of impaired claims, "determined without including any

acceptance of the plan by any insider" if a class of claims is impaired by the Amended Plan.  11

U.S.C. § 1129(a)(10).  The Debtor satisfies this requirement in that at least one impaired class of

creditors has accepted the Amended Plan, without including the acceptance of the Amended Plan

by insiders, if any, in such Classes.  <u>See</u> Jareck Certification.

Claims in Class 2 (Fifth Third Claim), Class 3 (Keeneland Claim), Class 4 (Service

Provider Claims) and Class 6 (General Unsecured Claims) are impaired and have voted to accept

the Amended Plan in accordance with Sections 1126 of the Bankruptcy Code.  <u>See</u> 11 U.S.C.

§§ 1126(f) and 1126(g).  Accordingly, the requirements of Section 1129(a)(10) of the

Bankruptcy Code have been met.

48051/0001-6800850v4

**XI.    SECTION 1129(a)(11):  CONFIRMATION OF THE AMENDED PLAN IS NOT LIKELY TO BE FOLLOWED BY LIQUIDATION OR THE NEED FOR FURTHER REORGANIZATION OF THE DEBTOR**

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to determine that the plan is feasible.  Specifically, the Bankruptcy Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  As described below, and for the reasons set forth in the Seder Affidavit and Katz Affidavit, the Amended Plan is feasible within the meaning of this provision.

**A.    Legal Standard**

The feasibility test set forth in Section 1129(a)(11) requires the Bankruptcy Court to determine whether a plan is workable and has a reasonable likelihood of success.  See Greate Bay, 251 B.R. at 226 ("[t]he proponent must present evidence to sufficiently demonstrate that the plan has a reasonable chance of succeeding"); see also In re Armstrong World Indus., Inc., 348 B.R. 136, 167 (D. Del. 2006); In re N11 Holdings, 288 B.R. 356, 364 (Bankr. D. Del. 2002); In re The Leslie Fay Cos., 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997).  "The feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed." Kane v. Johns-Manville Corp., 843 F.2d at 649; see also Congoleum Corp., 362 B.R. at 203 ("It is generally recognized that the purpose of the feasibility requirement in § 1129(a)(11) is to prevent the confirmation of visionary plans, but it does not demand irrefutable proof of success"); In re One Times Square Assocs. Ltd. P'ship, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("It is not necessary that the success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success") (internal citation omitted); In re U.S. Truck Co., Inc., 47 B.R. 932, 944

31

(E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized

company will succeed"), <u>aff'd</u>, 800 F.2d 581 (6th Cir. 1986).

Courts have suggested the following factors as probative on the issue of feasibility:

(a)      the adequacy of the capital structure;

(b)      the earning power of the business;

(c)      economic conditions;

(d)      the ability of management;

(e)      the probability of the continuation of the same management; and

(f)      any other related matters which will determine the prospects of a sufficiently
         successful operation to enable performance of the provisions of the plan.

<u>Greate Bay</u>, 251 B.R. at 226-27 (citing <u>In re Temple Zion</u>, 125 B.R. 910, 915 (Bankr. E.D. Pa.

1980)).  The foregoing list is neither exhaustive nor exclusive.  <u>Drexel Burnham</u>, 138 B.R. at

763.

### B.      The Amended Plan Satisfies the Feasibility Requirement of 1129(a)(11)

The Amended Plan satisfies the feasibility requirement of the Bankruptcy Code.  As

demonstrated by the Debtor's cash flow projections attached as Appendix C to the Amended

Disclosure Statement, as modified pursuant to Exhibit A to the Katz Affidavit to account for the

modified treatment of Fifth Third, the Debtor will have sufficient cash flow to meet its

obligations under the Amended Plan.  The Projections were (a) prepared by the Debtor, with

input from the Debtor's financial advisors, after a thorough analysis of the Debtor's operations

and the contemplated capital structure of the Reorganized Debtor, (b) formulated using

conservative assumptions (as set forth in the Projections), and (c) premised on projected and

reasonably achievable results.  As such, the Projections were prepared in good faith and with the

most accurate estimates and judgments of the Debtor as to the future operating and financial

48051/0001-6800850v4

performance of the Reorganized Debtor.  As demonstrated by the cash flow projections,

confirmation of the Amended Plan is not likely to be followed by a further liquidation or the

need for further financial reorganization of the Debtor (not otherwise contemplated under the

Amended Plan) and, therefore, the Amended Plan is feasible within the meaning of Section

1129(a)(11) of the Bankruptcy Code.

### XII.   SECTION 1129(a)(12):  ALL STATUTORY FEES HAVE BEEN OR WILL BE PAID

Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable

under section 1930 [of title 28 of the United States Code], as determined by the court at the

hearing on confirmation of the plan."  11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy

Code provides that "any fees and charges assessed against the estate under [section 1930 of]

chapter 123 of title 28" are afforded priority as administrative expenses.  11 U.S.C. § 507.  In

accordance with Sections 507 and 1129(a)(12) of the Bankruptcy Code, the Amended Plan

provides that all such fees and charges, to the extent not previously paid, shall be paid on the

Effective Date.  See Amended Plan at Art. II, Sec. 2.2.A(iv).  Therefore, the Amended Plan

satisfies Section 1129(a)(12) of the Bankruptcy Code.

### XIII.   SECTION 1129(a)(13), 1129(a)(14), 1129(a)(15) AND 1129(a)(16) ARE NOT APPLICABLE

The Debtor has no obligation to pay "retiree benefits" within the meaning of Section

1114 of the Bankruptcy Code on or before the Filing Date.  Accordingly, Section 1129(a)(13) of

the Bankruptcy Code is not applicable here.

Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support

obligations.  The Debtor is not subject to any domestic support obligations and, as such, Section

1129(a)(14) does not apply here.

48051/0001-6800850v4

Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code).  The Debtor is not an "individual" and, accordingly, Section 1129(a)(15) is inapplicable here.

Finally, Section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business or commercial corporation or trust be made in accordance with applicable provisions of nonbankruptcy law.  The Debtor is not a moneyed, business, or commercial corporation.  As such, Section 1129(a)(16) is inapplicable here.

## XIV.   THE PRINCIPAL PURPOSE OF THE AMENDED PLAN IS NOT THE AVOIDANCE OF TAXES AND COMPLIES WITH SECTION 1129(d)

Section 1129(d) of the Bankruptcy Code states that "[t]he court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."  11 U.S.C. § 1129(d).  The purpose of the Amended Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Moreover, no party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Amended Plan on the grounds that its principal purpose is the avoidance of taxes or application of section 5 of the Securities Act of 1933.  Accordingly, the Amended Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

## XV.   THE MODIFICATIONS TO THE AMENDED PLAN DO NOT ADVERSELY CHANGE THE TREATMENT OF THE CLAIM OF ANY CREDITOR AND, THEREFORE, VOTES IN FAVOR OF THE AMENDED PLAN SHALL BE DEEMED VOTES IN FAVOR THEREOF, AS MODIFIED

Section 1127(a) of the Bankruptcy Code allows a plan proponent to freely modify its plan at any time before confirmation so long as the plan, as modified, meets the requirements of Sections 1122 and 1123.  11 U.S.C. § 1127(a).  Section 1127(d) of the Bankruptcy Code further provides that "[a]ny holder of a claim or interest is deemed to have accepted or rejected, as the

34

case may be, such plan as modified, unless, within the time fixed by the court, such holder

changes such holders' previous acceptance or rejection."  11 U.S.C. § 1127(d).  Moreover,

pursuant to Fed. R. Bankr. P. 3019(a), if the Court finds that the proposed modification does not

materially and adversely change the treatment of the claim of any creditor who has not accepted

the modification in writing, the court may deem a claim or interest holder's vote for or against a

plan as a corresponding vote in relation to the modified plan without requiring a new disclosure

statement and solicitation of votes on the modified plan.  See Fed. R. Bankr. P. 3019(a); Enron

Corp. v. New Power Co. (In re New Power Co.), 438 F.3d 1113, 1117-118 (11th Cir. 2006); G-1

Holdings, 420 at 255.

      The test for determining whether a proposed plan modification so affects any creditor or

interest holder that accepted the plan is "whether the modification so affects any creditor or

interest holder who accepted the plan that such entity, if it knew of the modification, would be

likely to reconsider its acceptance."  G-1 Holdings, 420 B.R. at 255 (citing 9 COLLIER ON

BANKRUPTCY ¶ 3019.01 (15th ed. rev.2009)).  Examples of whether a modification adversely

affects any creditor or interest holder include whether the proposed amendment changes the

substantive recovery or contractual rights of any creditors.  Id. (finding re-solicitation

unnecessary where plan modifications did not adversely affect treatment of any creditors and the

only dissenting creditor's claim was made unimpaired by the modifications); In re Burns & Roe

Enters., Case No. 00-41610 (RG) 2009 WL 1372251 (D.N.J. 2009) (finding proposed

modifications to plan were not materially adverse to creditor because rights and remedies of

debtor and creditor under insurance policy at issue were unaffected by plan modifications).

      On June 30, 2010, the Debtor filed the Non-Material Modifications to the Amended Plan

[Docket No. 148].  The Non-Material Modifications include, among other things, a change in the

48051/0001-6800850v4

treatment of Fifth Third.  Fifth Third has accepted its revised treatment by way of voting in favor

of the Amended Plan.  The Non-Material Modifications, however, do not affect the recovery

currently offered to any party under the Amended Plan.

Accordingly, the Non-Material Modifications are non-material and, pursuant to Fed. R.

Bankr. P. 3019(a), the votes of any creditors in favor of the Amended Plan shall be deemed votes

in favor thereof, as modified.

## CONCLUSION

The Amended Plan satisfies all the requirements of Section 1129 of the Bankruptcy Code

by a preponderance of the evidence.  The Amended Plan is supported by Fifth Third and the

Committee, represents the best and highest recovery for creditors, is feasible and has been

accepted by the voting classes of impaired creditors.  The Amended Plan, being in the best

interests of the creditors of these estates, should therefore be confirmed.

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Zayat Stables, LLC
Debtor-in-Possession

By:_____*/s/ Michael D. Sirota*_____
                Michael D. Sirota
                Warren A. Usatine

DATED:  July 13, 2010